474 So.2d 1162 (1985)
Sam WILSON, Jr., Petitioner,
v.
Louie L. WAINWRIGHT, Etc., et al., Respondents.
Sam WILSON, Jr., Appellant,
v.
State of Florida, Appellee.
Nos. 67190, 67204.
Supreme Court of Florida.
August 15, 1985.
*1163 Ronald A. Dion of Entin, Schwartz, Dion and Scalfani, North Miami Beach, for petitioner/appellant.
Jim Smith, Atty. Gen. and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for respondents/appellee.
EHRLICH, Justice.
This case is before us on appeal from the trial court's denial of appellant's motion to vacate his conviction and sentence pursuant to Florida Rule of Criminal Procedure 3.850. We also have before us a petition for writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const.
The facts of this case and the issues raised on direct appeal are contained in this Court's decision in Wilson v. State, 436 So.2d 908 (Fla. 1983). This Court granted a stay of execution by order dated June 20, 1985, in order to fully address the merits of these collateral attacks on the legality of the conviction and sentence. We affirm the trial court's denial of relief pursuant to rule 3.850, but we grant the writ of habeas corpus and order appointment of counsel to afford petitioner a new direct appeal before this Court.
Appellant raised ten issues before the trial court in seeking relief pursuant to rule 3.850. The trial court struck five of these issues and parts of two others as improperly urged because they could have been raised on direct appeal. This was entirely proper. Raulerson v. State, 462 So.2d 1085 (Fla. 1985). The trial court then ruled that those issues not dismissed did not demonstrate appellant's entitlement to relief, citing the standard enunciated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Those issues involve strategic decisions as to investigation and/or presentation of evidence of prior altercations between the defendant and two of the victims of his attack, the presentation of evidence possibly relevant to mitigation, and the use of a certified legal intern in the preparation and presentation of the defense. Strategic decisions of counsel will not be second-guessed on collateral attack. We find that the use of the legal intern was within the express limitations of such involvement set forth in The Florida Bar Integration Rule Article XVIII, I(A) and V(A)(3). We agree with the trial court that the allegations before it did not constitute a deficient performance which deprived defendant of a "fair trial, a trial whose result is reliable." Strickland, 104 S.Ct. at 2064.
Petitioner seeks habeas corpus relief on grounds that his appellate counsel was ineffective. The criteria for proving ineffective assistance of appellate counsel parallel the Strickland standard for ineffective trial counsel: Petitioner must show 1) specific errors or omissions which show that appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance and 2) the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result. Johnson v. Wainwright, 463 So.2d 207 (Fla. 1985). We find that petitioner's allegations fulfill this test and that petitioner is entitled to a new appeal.
Petitioner's meritorious allegations involve the inadequacy of research and briefing of the appeal and the gross ineffectiveness of oral argument. Appellate counsel, R.E. Conner, briefed only five issues in the initial brief on the merits. At no time did he raise or discuss any issue relating to the sufficiency of the evidence to support the jury's finding of premeditation in either death. This issue was sufficiently apparent from the cold record that the two dissenting justices raised it in their separate opinions. Wilson, 436 So.2d at 912 (Overton, J., dissenting), 913 (McDonald, J., dissenting).
The decision not to raise this issue cannot be excused as mere strategy or allocation of appellate resources. This issue is crucial to the validity of the conviction and goes to the heart of the case. If, in fact, the evidence does not support premeditation, *1164 petitioner was improperly convicted of first degree murder and death is an illegal sentence. To have failed to raise so fundamental an issue is far below the range of acceptable appellate performance and must undermine confidence in the fairness and correctness of the outcome.
Additionally, Conner failed to address the propriety of the death penalty as applied in either his initial brief or his reply brief, even though the state raised the issue in its answer brief. After oral argument, this Court ordered Conner to file a supplemental brief addressing the death penalty. The result was a descriptive listing of cases in which this Court had discussed the two aggravating factors in dispute and a passing reference to one possible statutory mitigating circumstance. The application of case law to the facts before the Court was cursory and totally lacking in persuasive advocacy.
The propriety of the death penalty is in every case an issue requiring the closest scrutiny. Any appellate counsel who, after being ordered to address the issue, responds with such inadequate, unpartisan brief has failed to grasp the vital importance of his role as a champion of his client's cause. We do not approve of counsel urging frivolous claims, nor do we require that every colorable claim, regardless of relative merit, be raised on appeal. However, the basic requirement of due process in our adversarial legal system is that a defendant be represented in court, at every level, by an advocate who represents his client zealously within the bounds of the law. Every attorney in Florida has taken an oath to do so and we will not lightly forgive a breach of this professional duty in any case; in a case involving the death penalty it is the very foundation of justice.
At oral argument, Conner also demonstrated lack of preparation and zeal in urging his client's cause.
In the opening moments of oral argument, the following colloquy took place:
THE COURT: ... You don't consider [the legality of the sentence] with any materiality or relevance in a case where ... the death penalty has been imposed, sir?
CONNER: Uh, those particular points about the aggravating and mitigating circumstance, uh, I felt the prior decision of this court were clear that with the aggravating circumstances as found by the court, that and with no mitigating circumstances that it was, uh, in an area where the court had already decided, unless something has changed in the interim.
... .
THE COURT: Well, let me ask a question. Do you feel that death is the appropriate punishment if he is guilty.
CONNER: It's, it's quite possible, yes sir. Uh, there was sufficient evidence in this case for the jury to find premeditation and they did find premeditation.
Later in the argument, the discussion continued:
THE COURT: Would you agree that the evidence concerning the fact of his committing first degree murder in this instance was pretty overwhelming?
CONNER: I would say that it was overwhelming,
... .
THE COURT: May I ask you this please sir. Now, on the one hand, if I'm reading it correctly, you're saying that there is no question about the guilt and then your statement of the guilt there that the death penalty is appropriate. Am I misunderstanding you?
CONNER: No, I don't  I don't think I meant to say that if that's the way it came out.
These excerpts from oral argument illustrate appellate counsel's failure to present his client's case in its most favorable posture. This performance fell far below the range that is professionally acceptable.
Appointment of appellate counsel for indigent defendants is the responsibility of the trial court. We strongly urge trial judges not to take this responsibility lightly or to appoint appellate counsel without due *1165 recognition of the skills and attitudes necessary for effective appellate representation. A perfunctory appointment of counsel without consideration of counsel's ability to fully, fairly, and zealously advocate the defendant's cause is a denial of meaningful representation which will not be tolerated. The gravity of the charge, the attorney's skill and experience and counsel's positive appreciation of his role and its significance are all factors which must be in the court's mind when an appointment is made.
The role of an advocate in appellate procedures should not be denigrated. Counsel for the state asserted at oral argument on this petition that any deficiency of appellate counsel was cured by our own independent review of the record. She went on to argue that our disapproval of two of the aggravating factors and the eloquent dissents of two justices proved that all meritorious issues had been considered by this Court. It is true that we have imposed upon ourselves the duty to independently examine each death penalty case. However, we will be the first to agree that our judicially neutral review of so many death cases, many with records running to the thousands of pages, is no substitute for the careful, partisan scrutiny of a zealous advocate. It is the unique role of that advocate to discover and highlight possible error and to present it to the court, both in writing and orally, in such a manner designed to persuade the court of the gravity of the alleged deviations from due process. Advocacy is an art, not a science. We cannot, in hindsight, precisely measure the impact of counsel's failure to urge his client's best claims. Nor can we predict the outcome of a new appeal at which petitioner will receive adequate representation. We are convinced, as a final result of examination of the original record and appeal and of petitioner's present prayer for relief, that our confidence in the correctness and fairness of the result has been undermined.
We therefore grant petitioner's request for writ of habeas corpus and grant him a new direct appeal on the merits of his convictions and sentence. We note that new appellate counsel will be able, though not necessarily bound, to raise those issues which were stricken from petitioner's motion for relief pursuant to rule 3.850.
It is so ordered.
No motion for rehearing will be allowed.
BOYD, C.J., and OVERTON, McDONALD and SHAW, JJ., concur.
ADKINS, J., dissents.