## ANTHONY SMALL *v.* COMMISSIONER OF CORRECTION (SC 17803)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

---

Argued October 22, 2007—officially released May 6, 2008

*Joseph Visone*, special public defender, for the appellant (petitioner).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict*, state's attorney, for the appellee (respondent).

*Opinion*

ZARELLA, J. The issue in this appeal is whether the trial or appellate counsel of the petitioner, Anthony Small, rendered ineffective assistance in failing to object to, or to challenge on direct appeal, the trial court's jury instructions, which did not include the legal definition of "attempt," when the petitioner was charged with felony murder predicated on the crime of attempt to commit robbery in the first degree. We conclude that any error by the petitioner's trial or appellate counsel did not prejudice the petitioner and, therefore, affirm the judgment of the Appellate Court, albeit for reasons different from those on which the Appellate Court relied.

Our prior decision in *State* v. *Small*, 242 Conn. 93, 700 A.2d 617 (1997), sets forth the facts that a jury reasonably could have found. "In October, 1990, the [petitioner] was involved in drug trafficking with his friend, Eric Amado. The [petitioner] and Amado stored drugs at the West Haven apartment of Amado's girlfriend, Joanne Bailey. Bailey shared the apartment with Hope Vaughn, who had been dating the [petitioner]. On October 19, 1990, Vaughn, who was upset over statements regarding her allegedly made by the [petitioner] and Amado, decided that she would 'put a stop to it.' Vaughn telephoned a friend, Anthony Young, and asked him to come to the apartment she shared with Bailey. She then opened a window and knocked over some of

the apartment's furnishings to make it appear as though the apartment had been burglarized. When Young arrived, Vaughn told him that she had some things to bring out and, after Young had backed his car, a red Toyota Celica, up to the door of the apartment building, she loaded two duffel bags and a small safe containing the drugs into the trunk of the car. The two then drove to Young's apartment in Bridgeport, where they were joined by Peter Hall, Vaughn's former boyfriend.

"Meanwhile, the [petitioner] and Amado returned to the West Haven apartment and discovered that the drugs were missing. The two men immediately began to search for the drugs and for whomever had taken them. They were joined in their search by Joanne Bailey, as well as by two associates, John 'John-John' Wideman and David 'Chico' Bailey. During the course of their search, the group traveled to Stamford so that Amado could consult with a 'voodoo man' of his acquaintance. The 'voodoo man' told him that Vaughn had taken the drugs. Joanne Bailey informed Amado that Vaughn might be with a friend, Sarita Malloy, who lived in Bridgeport with Young. The group drove in two cars to Young's apartment, where they found Vaughn, Young and Hall standing outside on the porch. At that time, they apparently did not suspect Young or Hall to have been involved in the theft. Joanne Bailey approached Vaughn and told her that Amado wanted to speak with her. Vaughn went over to the car where Amado was waiting, and when he ordered her to get into the car she complied. The group then returned to West Haven, where they spent the night. Throughout the night, Amado and the [petitioner], along with the other two men, questioned Vaughn as to her knowledge of the missing drugs. Amado threatened to shoot her and, at one point, the [petitioner] tied a sock around Vaughn's head while David Bailey threatened her with a gun.

"The next morning, Joanne Bailey asked neighbors whether they had seen anything suspicious. After being told by a neighbor that Vaughn had been seen loading bags into the trunk of a red Toyota, the [petitioner], Amado, Joanne Bailey, Wideman and David Bailey returned to Young's Bridgeport apartment. The men were armed with automatic or semiautomatic weapons, including Uzis. The [petitioner] carried an Uzi.[1] Upon arriving at Young's apartment, Amado told Young that he had come for his 'stuff.' Young told him to calm down and to come inside the house, but Amado began yelling and then began shooting. Young and Hall were fatally wounded, and Joanne Bailey was shot in the back of her left thigh. The [petitioner], Amado, Wideman and David Bailey fled the scene. The [petitioner] subsequently left the Bridgeport area, and moved to Queens, New York, where he remained until his arrest for the murders in 1994." Id., 97–98.

"The petitioner was originally charged with one count of capital felony in violation of General Statutes (Rev. to 1989) § 53a-54b (8), two counts of felony murder in violation of General Statutes § 53a-54c, one count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-48, and one count of kidnapping in the second degree in violation of General Statutes § 53a-94. He was found guilty of all counts, after a jury trial, except for the count of kidnapping. On direct appeal, the conviction

---

[1] The petitioner testified at his criminal trial that he did not carry a weapon on the morning of October 20, 1990. The state presented evidence at trial, however, from which a jury reasonably could have found that the petitioner carried an Uzi. At oral argument in the present appeal, the petitioner's counsel stated that the petitioner admitted that others were armed but still maintained that he was not armed when the group returned to Young's apartment. The petitioner's appellate brief, however, asserts in the statement of facts that "[t]he [petitioner] carried an Uzi." For purposes of resolving this appeal, we will assume that the evidence of whether the petitioner was carrying a firearm on October 20, 1990, is contested.

of capital felony was vacated, and the case was remanded for resentencing on the felony murder conviction. . . . On remand, he was sentenced to a total effective term of forty-five years imprisonment. Thus, after direct appeal, the petitioner avoided a sentence of life imprisonment without the possibility of release . . . ." (Citation omitted.) *Small* v. *Commissioner of Correction*, 98 Conn. App. 389, 394–95, 909 A.2d 533 (2006).

The petitioner filed a petition for a writ of habeas corpus on February 2, 2000, in which he "raised seven errors of the trial court, thirteen of trial counsel and five of appellate counsel . . . ." Id., 394. The habeas court subsequently granted the petitioner permission to amend his habeas petition to add the two claims at issue in this appeal. First, the petitioner claimed that his trial counsel rendered ineffective assistance when he failed to seek a jury instruction on "[c]riminal attempt" as defined in General Statutes § 53a-49 and failed to object to the trial court's omission of such an instruction in its charge to the jury. Second, the petitioner claimed that his appellate counsel rendered ineffective assistance in failing to raise on direct appeal the issue of whether such an instruction was constitutionally required.

A criminal defendant's right to the effective assistance of counsel extends through the first appeal of right and is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. See, e.g., *Evitts* v. *Lucey*, 469 U.S. 387, 394, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *In re Christina M.*, 280 Conn. 474, 489, 908 A.2d 1073 (2006). To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a peti-

tioner satisfy both "a 'performance prong' and a 'prejudice prong.' To satisfy the performance prong, a claimant must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed . . . by the [s]ixth [a]mendment.' [Id.] To satisfy the 'prejudice prong,' a claimant must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' Id., 694. The claim will succeed only if both prongs are satisfied." *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 458, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006). It is well settled that "[a] reviewing court can find against a petitioner on *either* ground, whichever is easier." (Emphasis added.) *Valeriano* v. *Bronson*, 209 Conn. 75, 86, 546 A.2d 1380 (1988); see also *Strickland* v. *Washington,* supra, 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant").

With respect to the petitioner's claims in the present case, the habeas court found the following facts. "[T]he [trial] court charged that the underlying felony to the felony murder charge was criminal attempt to commit robbery. However, the jury was not charged on the elements of attempt . . . .

"The charge was otherwise in order, and the jury was told in the portions dealing with accessories and conspiracy that it must find that the petitioner acted with the mental state required for the commission of the crime. Then, it was told that, in order to convict on conspiracy, at least one conspirator must commit an overt act to further the conspiracy." (Citation omitted.) Without addressing whether either trial counsel's or appellate counsel's failure to except to the charge amounted to ineffective assistance, the habeas court

concluded that no prejudice resulted from the trial court's failure to charge the jury on the statutory definition of criminal attempt. The habeas court specifically concluded: "[T]his jury found facts *so closely related to those required to find an attempt that the failure to charge on attempt was harmless. . . .*

"Under the circumstances of this case with overwhelming evidence of guilt and the jury's finding that [the petitioner] not only participated in but conspired to commit the underlying offense, the court concludes the inclusion of language treating with 'attempt' would have had no reasonable effect on the outcome."[2] (Citations omitted; emphasis added.) Therefore, the habeas court rendered judgment denying the habeas petition. Thereafter, the petitioner sought certification to appeal from the habeas court's judgment, which the habeas court denied.[3] The petitioner then appealed to the Appellate Court, which concluded that the "petition for certification to appeal should have been granted" as to

---

[2] In support of this conclusion, the habeas court cited *Carella* v. *California*, 491 U.S. 263, 270–71, 109 S. Ct. 2419, 105 L. Ed. 2d 218 (1989) (Scalia, J., concurring). We note, however that the "functional equivalent" test to which the habeas court refers was not, as it states, "utilized by the United States Supreme Court" in *Carella*, but, rather, was discussed in Justice Scalia's concurring opinion in *Carella*, which was joined by three other justices. Moreover, the functional equivalent test, pursuant to which a reviewing court determines whether other facts that a jury finds are so closely related to the element on which the trial court fails to instruct that no jury reasonably could find those other facts without also finding the facts that would satisfy the omitted element; see id., 271 (Scalia, J., concurring); was expressly rejected by the court in *Neder* v. *United States*, 527 U.S. 1, 14, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

For the reasons that we discuss more fully in the text of this opinion, however, we agree with the habeas court's conclusion that the petitioner suffered no prejudice as a result of trial counsel's failure to secure an instruction that included the statutory definition of attempt or appellate counsel's failure to raise the issue on appeal.

[3] We note that the petitioner's appellate rights expired following the denial of his habeas petition in 2000 but were reinstated by the court, *Fracasse*, J., in 2004 with no opposition from the respondent.

the claim of ineffective assistance as it related to the failure to charge the jury on the definition of attempt.[4] *Small* v. *Commissioner of Correction*, supra, 98 Conn. App. 391. The Appellate Court, however, ultimately upheld the habeas court's denial of the habeas petition. See id., 401.

The petitioner appealed from the judgment of the Appellate Court, and we granted certification limited to the following issue: "Did the Appellate Court properly determine that the petitioner was not denied effective assistance of counsel at trial and on appeal?"[5] *Small* v. *Commissioner of Correction*, 281 Conn. 902, 916 A.2d 45 (2007).

As a preliminary matter, we note that, although the habeas court rendered its decision on the basis of its determination that the petitioner was not prejudiced by the trial court's failure to instruct on the definition

---

[4] The respondent claims that the petitioner "has not established that the habeas court abused its discretion in denying certification to appeal . . . ." The respondent, however, did not file a cross appeal on this issue, and, therefore, our review of the Appellate Court's determination that the habeas court should have certified this issue for appeal is not before us. Our grant of certification is limited to the underlying merits of the petitioner's claim, i.e., whether "the Appellate Court properly determine[d] that the petitioner was not denied effective assistance of counsel at trial [or] on appeal . . . ." *Small* v. *Commissioner of Correction*, 281 Conn. 902, 916 A.2d 45 (2007).

[5] After hearing oral argument in this matter, we ordered the parties to file supplemental briefs addressing the following question: "In light of *Strickland* v. *Washington*, [supra, 466 U.S. 668], *Brecht* v. *Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), and *Fry* v. *Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007), what are the standard(s) of review in habeas matters of claims of ineffective assistance of trial and appellate counsel premised upon the failure to raise the issue of lack of an instruction on an essential element of the crime charged at trial and on direct appeal?" We considered the parties' arguments and have concluded that the appropriate standard of review is *Strickland*, even when the ineffective assistance claim is premised on the trial court's failure to charge on an essential element of an offense. As we discuss more fully in the text of this opinion, however, the petitioner's supplemental brief has, in part, led us to reconsider the proper application of *Strickland* to claims of ineffective assistance of appellate counsel.

of attempt, the Appellate Court affirmed the habeas court's judgment on a different basis, namely, that neither counsel had rendered ineffective assistance. *Small* v. *Commissioner of Correction*, supra, 98 Conn. App. 391, 399. In his dissent, Judge Harper concluded that the trial court should have instructed the jury on the statutory definition of attempt. Id., 408 (*Harper, J.*, dissenting). Further, he concluded that the failure of trial counsel to object to the court's omission and the failure of appellate counsel to raise the issue on appeal prejudiced the petitioner. Id., 409 (*Harper, J.*, dissenting). Our review of the record reveals that the habeas court made no factual findings with respect to either appellate counsel's or trial counsel's performance. We previously have recognized that, in considering a habeas appeal, "[t]he underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators." (Citation omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152, 662 A.2d 718 (1995). When the record on appeal is devoid of factual findings by the habeas court as to the performance of counsel, it is improper for an appellate court to make its own factual findings. See, e.g., *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 447 n.4, 610 A.2d 598 (1992) (having found no prejudice, this court did not remand case to habeas court for finding of underlying historical facts and conclusion as to counsel's performance). In the present case, both the petitioner's trial counsel and appellate counsel testified before the habeas court and were examined about their strategic decisions, and, respectively, about the choice of objections at trial and of issues to raise on appeal. Therefore, credibility determinations were especially relevant and properly the purview of the fact finder and not of the Appellate Court. We conclude, however, that the record is ade-

quate for us to review the habeas court's decision that the petitioner failed to satisfy the prejudice prong of *Strickland.*

We begin by setting forth the standard of review applicable to the petitioner's appeal. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction,* 284 Conn. 433, 448, 936 A.2d 611 (2007). The application of historical facts to questions of law that is necessary to determine whether the petitioner has demonstrated prejudice under *Strickland,* however, is a mixed question of law and fact subject to our plenary review. See, e.g., *Copas* v. *Commissioner of Correction,* supra, 234 Conn. 152–53; see also *Strickland* v. *Washington,* supra, 466 U.S. 698.

With respect to the prejudice allegedly suffered, the petitioner claims that, due to the omission of an instruction as to the statutory definition of attempt, "it was entirely possible that each juror used his or her own subjective definition of what constitutes an attempt, thereby diluting the state's burden to prove that particular element beyond a reasonable doubt." The respondent, the commissioner of correction, claims that, "while it may have been preferable for the court to explain the concept of attempt more fully, the absence of such elaboration did not result in an unreliable verdict."

We first address the petitioner's claim that his appellate counsel rendered ineffective assistance. Our resolution of this claim requires us to revisit our holding in *Bunkley* v. *Commissioner of Correction,* supra, 222 Conn. 444. In *Bunkley,* we announced that, in ascertaining whether a habeas petitioner has satisfied the prejudice prong of *Strickland* for a claim of ineffective assistance of appellate counsel, the proper inquiry is

the same as that for assessing a claim against trial counsel's performance. See id., 454. "In either case [the petitioner's] burden should be the same: to establish that, based upon the totality of the evidence before the jury and upon the likely effect of the . . . error, as a result of the error of the trial court that was not brought to the attention of either that court or [the appellate] court on [the petitioner's] direct appeal, there is a probability sufficient to undermine confidence in the verdict that [the petitioner] seeks to overturn." Id., 459. In so concluding, we found "convincing guidance . . . in the fundamental rationale of *Strickland*, namely, the overarching emphasis on the necessity for ensuring the reliability of the verdict that is under attack." Id., 456.

Accordingly, since *Bunkley*, the proper inquiry for all claims of ineffective assistance requires a determination of whether, in the absence of either trial counsel's or appellate counsel's errors, the result of the trial would have been different. In adopting this rule, however, both the majority and dissenting opinions in *Bunkley* acknowledged the implications that it may have on a habeas petitioner's likelihood of establishing that he was prejudiced by his appellate counsel's representation. See id., 458; see also id., 467–68 (*Berdon, J.*, dissenting). An analysis of whether a habeas petitioner has been prejudiced by his appellate counsel's failure to raise an issue of constitutional magnitude on appeal *"would not require . . . that we find the error . . . harmless beyond a reasonable doubt, despite the constitutional nature of the misstatement in the charge . . . for which the harmlessness beyond a reasonable doubt standard would be applicable on direct appeal."* (Emphasis added.) Id., 458. In contrast, the approach adopted in *Bunkley* requires the habeas court to assess the petitioner's claim by "[t]aking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings . . . [and

determining] the prejudice inquiry [by asking] if the [petitioner] has met the burden of showing that the decision reached [at trial] would reasonably likely have been different absent the errors." (Internal quotation marks omitted.) Id. Thus, *Bunkley* dictates that the latter standard applies regardless of whether the petitioner's claim would have resulted, on direct appeal, in a reversal of his conviction or a new trial. See id., 458–60. "The practical result of the majority's decision [in *Bunkley*] is that if the [petitioner] is fortunate enough to have competent appellate counsel, he or she will get a new trial when there is reversible error. If, however, the [petitioner] is unfortunate to have been assigned or [to have] retained appellate counsel who fails to raise the same issue that, if properly raised, would on appeal have resulted in a new trial, [the petitioner] will have *the additional burden* of proving that the counsel's failure undermined the reliability of the conviction." (Emphasis added.) Id., 467 (*Berdon, J.*, dissenting).

We note that the parties in the present case have not expressly requested that we revisit *Bunkley*. The petitioner, however, has done so implicitly. In his supplemental brief, he urges us not to apply the higher standard for prejudice enunciated in *Strickland*, which we applied to a claim of ineffective assistance of appellate counsel in *Bunkley*. Instead, he contends that we should measure prejudice by application of the more deferential harmless error standard that an appellate court would use on direct appeal. Specifically, the petitioner contends that, "since [his] appellate counsel either forgot to raise the issue, or never recognized it in the first place . . . the bar is now raised" if we do not apply the harmless error standard used in direct appeals. In deciding the appropriate prejudice standard for claims of ineffective assistance of appellate counsel in *Bunkley*, we specifically noted that the United States Supreme Court had not addressed the issue of which

proceeding's outcome a reviewing court should look to in determining whether a petitioner has demonstrated prejudice as a result of appellate counsel's performance. See id., 455. Since our decision in *Bunkley*, however, the United States Supreme Court has adopted the approach that we rejected in *Bunkley*. See *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). Moreover, we have discovered that our position is a minority position among state courts that have addressed the issue. For the foregoing reasons, we determine that, in light of the United States Supreme Court's 2000 decision in *Smith*, our approach is no longer correct.

In *Smith*, the United States Supreme Court invoked *Strickland* to review a claim of ineffective assistance of appellate counsel and enunciated the standard for evaluating a habeas petitioner's claim: "[H]e must show a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal." Id. We recognize that we are not compelled to follow the United States Supreme Court in our postconviction jurisprudence. E.g., *Valeriano v. Bronson*, supra, 209 Conn. 83 n.7. Several considerations, however, counsel in favor of adopting the approach in *Smith* in place of *Bunkley*: (1) our prior conclusion that the constitutional right to effective assistance of counsel is identical under the United States and Connecticut constitutions; (2) our reliance on federal courts for guidance in reviewing these claims; and (3) *Smith*'s further interpretation of the United States Supreme Court's own principle that federal courts apply in federal habeas proceedings. In *Aillon v. Meachum*, 211 Conn. 352, 559 A.2d 206 (1989), we acknowledged that this court "consistently [has] cited with approval the prevailing federal constitutional standard of review of ineffective assistance of counsel claims in *Strickland* . . . without ever once indicating that the protection afforded by our state constitution

imposes a different standard for review of such claims."
(Citation omitted.) Id., 355 n.3. We thus concluded "that
the state and federal constitutional standards for review
of ineffective assistance of counsel claims are identi-
cal." Id., 355–56 n.3; see also *Herbert* v. *Manson*, 199
Conn. 143, 144, 506 A.2d 98 (1986) (observing that "[t]he
principles that govern claims of ineffective assistance
of counsel have recently been fully articulated by this
court and by the United States Supreme Court" and
citing *Strickland* for these principles). Furthermore, we
note that our research clearly reveals that the interpre-
tation of *Strickland* that the United States Supreme
Court announced in *Smith* is aligned with the approach
taken by many other courts both before and after the
*Smith* decision. See, e.g., *Mapes* v. *Tate*, 388 F.3d 187,
194 (6th Cir. 2004); *Turner* v. *Duncan*, 158 F.3d 449,
459 (9th Cir. 1998); *Heath* v. *Jones*, 941 F.2d 1126, 1132
(11th Cir. 1991), cert. denied, 502 U.S. 1077, 112 S. Ct.
981, 117 L. Ed. 2d 144 (1992); *Abdurrahman* v. *Hender-
son*, 897 F.2d 71, 74 (2d Cir. 1990); *Gray* v. *Greer*, 800
F.2d 644, 646 (7th Cir. 1985); *Wilson* v. *Wainwright*,
474 So. 2d 1162, 1163 (Fla. 1985); *Phillips* v. *Williams*,
276 Ga. 691, 691, 583 S.E.2d 4 (2003); *Browning* v. *State*,
120 Nev. 347, 365, 91 P.3d 39 (2004); *State* v. *Myers*,
102 Ohio St. 3d 318, 319, 810 N.E.2d 436 (2004); *Ex
parte Santana*, 227 S.W.3d 700, 705 (Tex. Crim. App.
2007); but see *Gering* v. *State*, 382 N.W.2d 151, 156 (Iowa
1986) (for purposes of reviewing claims of ineffective
assistance of appellate counsel, prejudice "must be
measured in terms of [the error's] probable conse-
quences at trial"). Finally, we note that if we were to
ignore the federal courts' application of *Strickland* to
appellate counsel claims in our courts, the federal
courts nevertheless would apply that standard when
petitioners subsequently seek habeas relief there.

As previously explained, if we follow our existing
approach in *Bunkley*, we would review the petitioner's

claim that his appellate counsel rendered ineffective assistance by determining whether there is a reasonable probability that, but for appellate counsel's failure to raise the claim of error on appeal, the outcome of the trial would have been different. In contrast, if we follow the United States Supreme Court's standard in *Smith*, we must assess whether there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed in his direct appeal, i.e., reversal of his conviction or granting of a new trial. The important difference is that, under the *Smith* paradigm, to determine whether a habeas petitioner had a reasonable probability of prevailing on appeal, a reviewing court necessarily analyzes the merits of the underlying claimed error in accordance with the appropriate appellate standard for measuring harm. See, e.g., *Turner* v. *Duncan*, supra, 158 F.3d 459 (assessing likelihood that claim of improper instruction would have been successful if raised on appeal by appellate counsel); *Duhamel* v. *Collins*, 955 F.2d 962, 967 (5th Cir. 1992) (assessing prejudice of appellate counsel's failure to raise sufficiency of evidence claim by applying test for whether there was reasonable doubt that rational fact finder would have found disputed element); *Abdurrahman* v. *Henderson*, supra, 897 F.2d 74–75 (analyzing merits of illegal stop and frisk claim to determine whether there was reasonable probability that petitioner would have prevailed on appeal); see also *Liu* v. *Mitchell*, United States District Court, Docket No. 04-1042-H (S.D. Cal. January 12, 2006) (report and recommendation of United States Magistrate Judge Leo Papas) ("to establish ineffective assistance of her appellate counsel, [the] [p]etitioner must show that she would have prevailed in the state court had the California Supreme Court examined the claim under the [harmless error standard set forth in] *Chapman* [v. *California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]").

In the present case, the petitioner's ineffective assistance of appellate counsel claim is premised on appellate counsel's failure to challenge on appeal an allegedly unconstitutional jury instruction. It is well settled that a reviewing court evaluates a trial error of constitutional magnitude under the harmless error standard set forth by the United States Supreme Court in *Chapman* v. *California*, supra, 386 U.S. 24.[6] See, e.g., *State* v. *Brown*, 279 Conn. 493, 504, 903 A.2d 169 (2006). In applying *Chapman*, a reviewing court must determine whether the state has proved that the unconstitutional error was harmless beyond a reasonable doubt. Thus, when it is well settled that the claimed error on direct appeal would have received *Chapman* review, our approach in *Bunkley* would foreclose a habeas petitioner from ever having his claim considered under this less stringent analysis, whereas *Smith* would require a habeas court to consider the merits of the claim under *Chapman*[7] to ascertain whether the petitioner would have had a reasonable probability of appellate success.[8] For

[6] In *Chapman* v. *California*, supra, 386 U.S. 22, the United States Supreme Court announced that not all trial errors of constitutional magnitude require automatic reversal of a defendant's conviction. Rather, such errors may be reviewed under a harmless error standard to determine whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id., 24.

[7] The Sixth Circuit Court of Appeals has observed that, "[a]lthough this analysis necessarily involves an evaluation of the underlying claims, it does *not* require a decision on or a determination of these issues. All that is required is a determination that, based on the nature of the underlying claims, there is a reasonable probability that, but for his counsel's failings . . . [the petitioner] would have prevailed on his appeal." (Internal quotation marks omitted.) *Mapes* v. *Tate*, supra, 388 F.3d 194.

[8] As we previously noted, we do not address the performance prong of *Strickland* in the present case for two reasons: (1) the habeas court did not address the performance of trial or appellate counsel; and (2) even if either counsel's performance was inadequate, the petitioner cannot establish prejudice. We note, however, that the record reveals some evidence suggesting that the failure of the petitioner's trial counsel to request an instruction on the statutory definition of criminal attempt might have been the result of a deliberate trial strategy. We do not address the issues that this evidence presents but recognize that evidence of trial strategy may be rele-

these reasons, we conclude that our decision in *Bunkley* has been superseded by the United States Supreme Court's subsequent interpretation, in *Smith*, of the *Strickland* prejudice prong, and, therefore, to the extent that *Bunkley* is inconsistent with *Smith*, it is hereby overruled.[9]

With these principles in mind, we address the merits of the petitioner's claim that his appellate counsel rendered ineffective assistance. The following additional facts are relevant to our resolution of this claim. The state's theory of the case was, in part, that the petitioner acted as an accessory to his friend, Amado, who had fired the fatal shots. The trial court instructed the jury on the law of accessorial liability and the crimes of felony murder, robbery, kidnapping, and conspiracy. The court further explained to the jury that, to find the petitioner guilty of felony murder, it had to conclude that the state had proven beyond a reasonable doubt that the petitioner had committed robbery or attempted

---

vant to claims of ineffective assistance of appellate counsel, especially when trial counsel's strategy may have influenced appellate counsel's determination of what claims to raise on direct appeal.

[9] With respect to the proper relief to be afforded a habeas petitioner who has satisfied the two-pronged test of *Strickland* for claims of ineffective assistance of appellate counsel, we note that our research reveals that there is a split of authority. One approach is to grant the petitioner a new appeal. See, e.g., *Mapes* v. *Tate*, supra, 388 F.3d 194; *Turner* v. *Duncan*, supra, 158 F.3d 459 and n.13; *Wilson* v. *Wainwright*, supra, 474 So. 2d 1163. Another approach, however, recognizes that, in order to analyze the petitioner's claim under *Strickland*, it is necessary to assess the merits of the underlying appellate issue, and, therefore, it is more appropriate for the court hearing the habeas appeal simply to order the ultimate relief sought, namely, a new trial or reversal of the petitioner's conviction. See, e.g., *Milliken* v. *Stewart*, 276 Ga. 712, 713–14, 583 S.E.2d 30 (2003); *Browning* v. *State*, supra, 120 Nev. 363–65, 372; cf. *Mintun* v. *State*, 168 P.3d 40, 45–46 (Idaho App. 2007) (assessing merits of petitioner's ineffective claim and rejecting claim), review denied, Docket No. 33038, 2007 Idaho LEXIS 183 (September 19, 2007). Because we conclude that the petitioner in the present case cannot satisfy the prejudice prong of *Strickland*, we need not address this issue.

robbery, either himself or as an accessory.[10] With respect to its instructions on felony murder, conspiracy, accessorial liability and robbery, the trial court instructed the jury that it must find that the petitioner acted with the intent to commit a robbery in the first degree in order to find him guilty. The court provided no explanation of what constituted an attempt. At trial,

---

[10] The trial court instructed the jury in relevant part: "[T]he state claims that the [petitioner] is guilty of each of the crimes charged by virtue of being an accessory to each of the crimes charged. An accessory is a criminal participant in a crime. If two or more persons participate in a crime, they are equally responsible, even though it was the immediate act of only one which actually brought the crime about. Participation means not only actively sharing in its final commission but in doing anything to aid or assist the conduct which caused it. . . . A person acting with the mental state required for commission of an offense who solicits, requests, commands, importunes, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

\* \* \*

"A person commits robbery when, in the course of committing a larceny, that person uses or threatens the immediate use of physical force upon another person for the purpose of preventing or overcoming resistance to the taking of property or to the retention thereof immediately after the taking. . . .

"A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from another.

\* \* \*

"In order for you to find the [petitioner] guilty of felony murder, the state must prove beyond a reasonable doubt each of these following elements that the accused acting alone or with one or more other persons committed or attempted to commit the crime of robbery in the first degree, and you will bring to bear upon this my definition of accessory liability. Two, that the [petitioner] or another participant in the crime of robbery in the first degree, [or] the attempt to commit [the] same, caused the death of another person. Three, that the [petitioner] or another participant caused the death while in the course of and in furtherance of the commission or attempted commission of . . . robbery in the first degree, or in the immediate flight therefrom. And that the victims . . . were not participants in the crime."

Additionally, the trial court instructed the jury, with respect to the count of conspiracy to commit robbery, that, in order to find the petitioner guilty, it must find, among other things, that the petitioner had the "intent [that] conduct constituting [the] crime be performed . . . ."

the petitioner never disputed that he had been with Amado and others at Young's residence when the shooting occurred, that he had seen Amado and others in possession of guns over the course of the events and that he knew Amado was making every effort to retrieve something valuable. The petitioner raised one defense at trial, specifically, that he merely was present at the scene of the crime.

The gravamen of the petitioner's claims is that the trial court's failure to instruct the jury on the statutory definition of criminal attempt resulted in the omission of an essential element of the charge against him. The respondent claims that the failure to provide the statutory definition of attempt was only a misdescription of an element and not a failure to charge on an essential element and, therefore, not of constitutional dimension. We agree with the petitioner.

The respondent and the Appellate Court have suggested that it is significant that the petitioner was not charged in the information with attempt to commit robbery. See *Small* v. *Commissioner of Correction*, supra, 98 Conn. App. 395. The respondent also notes that the felony murder statute does not include a definition of attempt, and, therefore, the trial court was not required to charge on attempt. We are not persuaded. The petitioner was charged with felony murder, predicated on either robbery or attempted robbery, and it is well settled that, "[i]n order to obtain a conviction for felony murder the state must prove, beyond a reasonable doubt, all the elements of the statutorily designated underlying felony, and in addition, that a death was caused in the course of and in furtherance of that felony." (Internal quotation marks omitted.) *State* v. *Lewis*, 245 Conn. 779, 786, 717 A.2d 1140 (1998).

Attempt to commit robbery is a separate and distinct crime from a completed robbery, and the commission

of an attempted robbery is a felony sufficient to support a felony murder conviction. Moreover, an attempt crime has two, well-defined essential elements that the state must prove beyond a reasonable doubt in order to obtain a conviction. See General Statutes § 53a-49.[11] The state must prove, first, that the accused acted with the intent to commit the crime—robbery in the present case—and, second, that the accused intentionally took action that constituted a "substantial step" toward completion of the crime. General Statutes § 53a-49 (a) (2). For the conduct to be considered a substantial step, the jury must find that it was "strongly corroborative of the actor's criminal purpose . . . ." General Statutes § 53a-49 (b). We conclude that a proper charge on felony murder predicated on an attempt crime should include an instruction on the definition of criminal attempt.

It is well settled that a failure to instruct the jury on every essential element of a crime charged may constitute a violation of the defendant's due process right to a fair trial.[12] E.g., *State* v. *Diaz*, 237 Conn. 518, 534 n.19, 679 A.2d 902 (1996). Such an omission in the charge, however, does not automatically warrant a new trial. Rather, the United States Supreme Court has concluded that such an error is subject to harmless error analysis. See *Chapman* v. *California*, supra, 386 U.S. 24; see also *Neder* v. *United States*, 527 U.S. 1, 9–10, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *State* v. *Mont-*

---

[11] General Statutes § 53a-49 provides in relevant part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . ."

[12] Because the trial court's failure to instruct the jury on the definition of attempt was an omission of constitutional magnitude, we need not address the respondent's contention that trial counsel's failure to object would have rendered the claim unreviewable on direct appeal. That claim would have been reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

*gomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000). Furthermore, in *Neder*, the United States Supreme Court enunciated a more specific test to use in determining whether an omitted element of a charge harmed the accused. A jury instruction that improperly omits an essential element from the charge constitutes harmless error if "a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." *Neder* v. *United States*, supra, 17; see also *State* v. *Montgomery*, supra, 738.

Because the petitioner raises his claim that he suffered harm as a result of the trial court's failure to instruct the jury on attempt via his claims of ineffective assistance of counsel, our review is limited to the issue of whether, under *Strickland*, the petitioner can demonstrate that trial counsel's failure to object to the erroneous charge or appellate counsel's failure to challenge it on appeal prejudiced him. We therefore apply our new rule with respect to his claim that appellate counsel provided ineffective assistance and assess whether there is a reasonable probability that, if the issue were brought before us on direct appeal, the petitioner would have prevailed. See *Smith* v. *Robbins*, supra, 528 U.S. 285. To ascertain whether the petitioner can demonstrate such a probability, we must consider the merits of the underlying claim. See, e.g., *Mapes* v. *Tate*, supra, 388 F.3d 194; *Heath* v. *Jones*, supra, 941 F.2d 1132; *Abdurrahman* v. *Henderson*, supra, 897 F.2d 74–75. As previously noted, we review a claim of instructional error pursuant to *Chapman* and *Neder*.

As we have stated, criminal attempt has two essential elements: an intent to commit the crime and an act that constitutes a "substantial step" toward the completion of that crime. General Statutes § 53a-49 (a) (2). The trial court instructed the jury that, in order to find the

petitioner guilty of conspiracy to commit robbery in the first degree and of felony murder, it had to conclude that he had the mental state required to commit the crime of robbery. Furthermore, § 53a-49 (a) provides that an accused must possess the intent to commit the underlying crime in order to sustain a conviction for attempt to commit that underlying crime. The jury returned a verdict of guilty of conspiracy to commit robbery in the first degree and felony murder. Thus, it is beyond question that the jury found that the petitioner possessed the requisite intent to commit a robbery. Therefore, we conclude that, with respect to the element of intent, the trial court's failure to charge on attempt was harmless.

The petitioner nevertheless claims that he has been prejudiced because the trial court's failure to define attempt diluted the state's burden of proof with respect to the act requirement. Specifically, the petitioner claims that, "without the proper statutory definition of attempt, it was impossible for the jury to determine if [his] actions" were sufficient to constitute a "substantial step" corroborative of a criminal purpose. The respondent counters that "the common understanding of the term 'attempt' provided adequate guidance for the jury." In the alternative, the respondent claims that, even if the instruction was improper, there is no showing of prejudice that warrants the reversal of the petitioner's conviction. As we previously discussed, we disagree with the respondent that the common understanding was sufficient and have determined that the trial court should have instructed the jury on the definition of attempt. We agree, however, that the petitioner was not prejudiced.

Our case law elaborates on the type of conduct that amounts to a substantial step. "The act or acts must be something more than mere preparation for committing the intended crime; they must be at least the start

of a line of conduct which will lead naturally to the commission of a crime which appears to the actor at least to be possible of commission by the means adopted." *State* v. *Green*, 194 Conn. 258, 272, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). "The application of this standard will, of course, depend upon the nature of the intended crime and the facts of the particular case . . . but this standard properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime. . . . This standard shifts the focus from what has been done to what remains to be done." (Citation omitted; internal quotation marks omitted.) Id., 277.

The jury rejected the petitioner's defense of mere presence and returned a guilty verdict on the counts of conspiracy to commit robbery in the first degree and felony murder. On the basis of the jury's verdict, the jury must have found that the petitioner possessed a criminal purpose, i.e., the intent to commit robbery. It was uncontested that the petitioner knew Amado and others were in possession of guns and that the petitioner accompanied Amado over a course of hours from one place to another while Amado questioned and threatened people about the whereabouts of Amado's "money." Although the petitioner contested that he knew that Amado was missing drugs, he did not dispute that he understood that Amado was missing money. Further, he testified that he knew that Amado's purpose was to retrieve whatever was missing and that Amado exhibited violent propensities and a willingness to engage in violence to accomplish this objective. The petitioner also did not contest the fact that he had accompanied Amado and others to Young's residence with the belief that, at a minimum, Young had information about Amado's money and was perhaps in possession of it. It is further undisputed that, upon arrival,

the petitioner got out of the car, stood in front of the house and watched Amado walk up to the front door, knock and enter.

We emphasize that the task before us is not to conclude definitively whether the petitioner, on appeal, would have prevailed on his claim under harmless error review. Rather, the task before us is to determine, under *Strickland,* whether there is a *reasonable probability* that the petitioner would have prevailed on appeal. We conclude that the actions taken by the petitioner, which were uncontested, constituted evidence overwhelming enough to demonstrate that the petitioner took a substantial step firmly corroborative of his criminal purpose and well beyond mere preparation. Therefore, we conclude that the petitioner has not demonstrated a· reasonable probability that he would have prevailed on appeal.

Finally, we address the petitioner's claim that he was denied the effective assistance of trial counsel because his counsel failed to object to the trial court's omission of the statutory definition of attempt. We review this claim under the two-pronged test of *Strickland.* The petitioner's claim in this case is readily dispensed with under the prejudice prong. We concluded in the preceding analysis that the petitioner's claim of ineffective assistance of appellate counsel must fail because he could not demonstrate a reasonable probability that, on appeal, the state could not have met its burden of showing that the omitted instruction was harmless beyond a reasonable doubt. In light of this conclusion, it would be impossible for the petitioner to demonstrate a reasonable probability that, in the absence of the omitted instruction, the verdict would have been different.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.