# THOMAS SANDERS *v.* COMMISSIONER OF CORRECTION
## (AC 24219)

Lavery, C. J., and Bishop and West, Js.

Argued March 22—officially released June 29, 2004

*Jo Anne Sulik*, assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellant (respondent).

*Michael O. Sheehan*, special public defender, with whom, on the brief, was *Richard A. Reeve*, special public defender, for the appellee (petitioner).

*Opinion*

BISHOP, J. The respondent commissioner of correction appeals from the judgment of the habeas court granting the amended petition for a writ of habeas corpus that was filed by the petitioner, Thomas Sanders. The respondent claims that the court improperly (1) considered a claim that was not raised in the petition, (2) concluded that the petitioner's trial counsel was ineffective for failing to advise the petitioner properly of a plea offer from the state at the petitioner's underlying criminal trial and (3) concluded that the petitioner was prejudiced by counsel's deficient performance. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the issues on appeal. The petitioner was arrested in the underlying criminal matter in June, 1991, on charges of robbery in the first degree, conspiracy to commit robbery in the first degree, carrying a pistol without a permit and assault in the first degree, as a result of a shooting on Lamberton Street in New Haven. In November, 1991, the petitioner was arrested on an additional matter, this time in connection with the robbery of two students on the Pearl Harbor Memorial Bridge, commonly referred to as the "Q Bridge" in New Haven. On both matters, the peti-

tioner was represented by Thomas M. Conroy, a special public defender. In February, 1993, Conroy conveyed to the petitioner the state's plea offer on both matters for an effective sentence of fifteen years incarceration, execution suspended after ten years, in exchange for guilty pleas on both pending cases. The petitioner rejected the offer and subsequently retained Ernest J. Diette, Jr., as replacement counsel. In October, 1993, after a trial by jury on the Q Bridge robbery, the petitioner was convicted of robbery in the first degree, conspiracy to commit robbery in the first degree and larceny in the third degree. He was sentenced on October 15, 1993, to fourteen years incarceration, execution suspended after nine years, with three years probation on the robbery charges.

At the habeas hearing, Gary W. Nicholson, the assistant state's attorney who had prosecuted the petitioner in the underlying criminal matter, testified that in February, 1993, the state extended a second plea offer to the petitioner on the underlying criminal matter. Under that offer the petitioner would have received eighteen years incarceration, suspended after twelve years, to run concurrently with the sentence on the Q Bridge robbery, to resolve the underlying criminal matter, as well as two new pending sexual assault and failure to appear charges. The offer was conveyed to Diette during a pretrial conference in the courthouse in New Haven. According to Nicholson, Diette, who did not testify at the habeas hearing, left the room, returned a short while later and informed him that the petitioner had rejected the offer. The petitioner then proceeded to trial and was convicted of attempt to commit assault in the first degree and carrying a pistol without a permit. See *State* v. *Sanders*, 54 Conn. App. 732, 738 A.2d 674, cert. denied, 251 Conn. 913, 739 A.2d 1250 (1999). He was sentenced to twenty years incarceration for attempt to commit assault in the first degree and five years for

carrying a pistol without a permit, the sentence to run consecutively to the petitioner's sentence for the Q Bridge robbery.

Following his unsuccessful appeal, the petitioner filed a two count amended petition for a writ of habeas corpus in which he alleged that trial counsel was ineffective for (1) failing to engage meaningfully in plea bargaining and to advise the petitioner in a timely manner of the state's position regarding plea negotiations prior to trial and (2) failing to advise the petitioner of his rights to sentence review and appeal.

According to the petitioner, he was never informed of the state's second offer that Nicholson made in February, 1993, and he would have accepted it if he had been informed of such an offer. Evidence was adduced at the habeas hearing that the petitioner, who had been incarcerated pending his trial, was not in court from the date he was sentenced on the Q Bridge robbery to the date he began selecting a jury in the underlying criminal matter. The petitioner also testified that he was never informed of or shown by Diette the statements of two witnesses against him. Additionally, he claimed that he was never informed that the statements could be used against him at trial or of the likely consequences of proceeding to trial. He also alleged that Diette never explained to him that he could apply for a review of the sentence imposed as a result of his conviction.

The court concluded that the petitioner was informed of the second offer. The court, however, also determined that the offer was not meaningfully explained to the petitioner. On that basis, the court concluded that Diette had rendered ineffective assistance by failing to explain meaningfully Nicholson's plea offer. The court found that the petitioner had been prejudiced by his counsel's failure and granted the petition for a writ of habeas corpus. The court ordered that the petitioner's

sentence be reduced to reflect the February, 1993 plea offer pending his entering of guilty pleas in accordance with the terms of the offer.[1] This appeal followed.

I

The respondent first claims that the court, in granting the petition, incorrectly considered a claim that was not raised in the petition. Specifically, the respondent alleges that the petitioner's claim that the second plea offer was not meaningfully explained to him was not properly before the court. We disagree.

We begin by addressing the legal principles that guide our assessment. It is well established that "[t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise." (Citations omitted; internal quotation marks omitted.) *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 406, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999).

Contrary to the respondent's assertion, the petitioner's claim that the plea agreement was not meaningfully explained to him was fairly before the court. The second amended petition includes the claim that "[a]ttorney Diette failed to convey the trial court's position on plea bargaining as well as the likely consequences of an adverse decision by the jury and the consequences for

---

[1] The court also found that the petitioner's counsel failed to advise him timely of and to apply for sentence review. That finding is not challenged on appeal.

sentencing in this case." Although the petition may not have expressly used the words "meaningfully explain," a fair reading of the petition makes it clear that the petitioner was challenging his counsel's performance as it related to the plea offer. Additionally, the petitioner's testimony at the habeas trial regarding the state's second plea offer provided fair notice to the respondent of the contours of the claim. Consequently, because both the petition and the petitioner's hearing testimony put the respondent on notice as to the petitioner's claim regarding the plea offer, the court did not render judgment on a claim that was not raised in the petition. Accordingly, that claim fails.

II

The respondent next argues that the court incorrectly concluded that the petitioner's trial counsel rendered ineffective assistance. Specifically, the respondent claims that counsel was effective and, in the alternative, that the petitioner was not prejudiced by counsel's ineffective assistance. We disagree.

As a prelude to our discussion, we set forth our standard of review as well as an overview of relevant habeas corpus law. "Our standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 797, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413 (2004).

The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. "In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, supra, 80 Conn. App. 798.

## A

The respondent first argues that there is no evidence in the record to support the court's factual finding that the second plea offer was not explained meaningfully to the petitioner. After reviewing the record, we conclude that there were sufficient facts from which the court could reach its determination that the plea offer had not been meaningfully explained to the petitioner. The petitioner's testimony was sufficient to establish that he was never informed about or shown the statements of the witnesses against him and that he was not told of the likely outcome if the case proceeded to trial. Although the petitioner never explicitly stated that the plea offer was not fully explained to him, and, in fact, he claimed that the offer was never made to him at all, the lapses in counsel's performance about which the petitioner did testify provided an adequate basis for the court's determination that the plea was not meaningfully explained to him. As to the respondent's argument

that the court's conclusion that the plea offer was extended but not explained meaningfully was logically inconsistent, we note that the court, as the trier of fact, was the sole arbiter of facts and credibility and was free to believe in whole or in part the petitioner's testimony. See *Spivey* v. *Commissioner of Correction*, 80 Conn. App. 58, 61, 832 A.2d 1204 (2003). The court also was free to draw reasonable inferences from that testimony when rendering judgment. See id. Accordingly, we conclude that the court's factual findings in that regard were not clearly erroneous.

B

The respondent next argues that the court did not properly apply the presumption that counsel's conduct was reasonable. Specifically, the respondent argues that the court improperly concluded that the presumption did not apply and that the court effectively relieved the petitioner of his burden of proving the allegations of his petition. We disagree.

The following additional facts are relevant to our discussion of that issue. At the habeas hearing, in addition to the evidence presented regarding the plea agreement, the court heard evidence concerning other aspects of Diette's performance. Specifically, the petitioner testified that counsel failed to inform him of his right to seek a review of his sentence and to appeal from his conviction. The court concluded that Diette was ineffective for not having advised the petitioner regarding his right to sentence review and for not having explored that opportunity on his behalf. On the basis of that finding, as well as the court's determination that Diette had failed to inform the petitioner about the statements of the witnesses, the likely use of those statements at trial and the potential negative consequences of going to trial, the court concluded that the presumption of competence had been rebutted. Conse-

quently, the court did not accord a presumption of competence in its review of Diette's performance regarding the state's second plea offer. With those additional facts at hand, we now turn to the respondent's claim.

It is well established that when analyzing a claim of ineffective assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* v. *Washington*, supra, 466 U.S. 690. Nowhere is it said, though, that such a presumption is irrebuttable. As with any refutable presumption, the petitioner may rebut the presumption on adequate proof of sufficient facts indicating a less than competent performance by counsel. In determining whether the presumption should apply, we agree with the court that other acts of ineffective assistance in the same matter may be considered in making that determination. In light of the court's determinations regarding counsel's other errors, we do not believe that the court was required to hold steadfast to the *Strickland* presumption in its assessment of counsel's performance regarding his communication to the petitioner of the state's second plea offer.

We agree, of course, with the respondent that the court's conclusion that the presumption of competence did not apply, did not relieve the petitioner of proving each of his allegations. In short, proof of ineffective assistance in one area of representation in the same matter, while eroding the presumption of competence applicable to counsel's representation generally, does not serve to relieve the petitioner from proving that counsel's performance was deficient in regard to the plea offer. See id. We disagree, however, with the respondent's claim that the court relieved the petitioner of that burden. As we have noted, there was sufficient evidence to support the court's factual conclusion that

the second plea offer was not meaningfully explained to the petitioner. Consequently, that claim, too, fails.

C

Last, the respondent claims that there was no evidence to support the conclusion that the petitioner was prejudiced by his counsel's deficient performance.

Under *Strickland*, it is not sufficient to find that counsel rendered ineffective assistance; rather, the court also must find that the petitioner was prejudiced by that action. To satisfy *Strickland*, under the circumstances of this case, the petitioner had to show that he would have accepted the offer and that the court would have rendered judgment in accordance with that offer. See *Cimino* v. *Robinson*, 6 Conn. App. 680, 683, 507 A.2d 486, cert. denied, 200 Conn. 802, 509 A.2d 517 (1986).

The respondent argues that the petitioner failed to prove that he would have accepted the offer had it been meaningfully explained to him. He argues that the petitioner's statement that "had he been given the offer, he would have accepted it" is insufficient to satisfy *Strickland* in light of the court's conclusion that the second plea offer was made. We glean from the respondent's brief that the respondent claims that in order to prove prejudice in the present case, the petitioner would have had to state explicitly that he would have accepted the offer had it been meaningfully explained to him. We do not believe, however, that such an exact statement was required. As the arbiter of facts, the court was required to evaluate the evidence and was permitted to make all reasonable and logical conclusions from the facts presented. See *State* v. *Gray*, 221 Conn. 713, 721, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). Accordingly, it was permissible for the court to infer from the petitioner's statement that "had the offer been made, he would have accepted it," that he would have accepted

the offer if it had been meaningfully explained. Consequently, the court's factual conclusion was not clearly erroneous.

The respondent also argues that as a matter of law, the testimony of the petitioner alone is insufficient to satisfy the prejudice prong of *Strickland*. We disagree.

It is well established that "[i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . It is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Citation omitted; internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 462, 844 A.2d 836 (2004). Although testimony by the petitioner may be self-serving or suspect, it was for the court to determine the weight to be given to such testimony. We can find no support in our jurisdiction for the proposition that corroboration is required in a habeas proceeding for a court to conclude that the petitioner was prejudiced. The court was in a unique position to assess the demeanor and credibility of the petitioner, and we will not disturb its findings on appeal. See *Spivey* v. *Commissioner of Correction*, supra, 80 Conn. App. 61. Accordingly, that claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.