## TROY LITTLE *v.* WARDEN, STATE PRISON*

Superior Court, Judicial District of Tolland
File No. CV-08-4002685-S

---

\* Affirmed. *Little* v. *Commissioner of Correction*, 147 Conn. App. 520, 83 A.3d 701 (2014).

Memorandum filed August 26, 2011

*Robert T. Rimmer*, for the petitioner.

*David Clifton*, deputy assistant state's attorney, for the respondent.

BRIGHT, J. The petitioner, Troy Little, alleges in his Amended Petition for a writ of habeas corpus, filed on December 20, 2010, that he was denied the effective assistance of counsel prior to his criminal trial, at his criminal trial, and on appeal from his conviction. In particular, the petitioner claims in Count One that his trial counsel, Attorney Thomas Farver, failed to: (1)

communicate to him a plea bargain offer made by the state;[1] (2) properly examine a key witness; and (3) request "balanc[ing]" language in the court's consciousness of guilt charge. In that same count, the petitioner alleges that his appellate counsel, Richard E. Condon, Jr., failed to adequately address the consciousness of guilt charge on appeal.

The trial of the matter was concluded before the court on May 13, 2011. The court heard from five witnesses: the petitioner; Attorney Farver; Attorney Condon (by deposition), Attorney John Waddock, the prosecutor in the petitioner's criminal case; and Darrin Stanley (by videoconference), the witness whom the petitioner alleges was not properly examined by Attorney Farver. The court also received as exhibits: Attorney Farver's notes of a conversation with Attorney Waddock (Pet. Ex. 1); the transcripts of the trial in the underlying criminal case (Pet. Ex. 2–4; Resp. Ex. A); documents related to the petitioner's appeal (Pet. Ex. 5–8); and the notice and transcript of Attorney Condon's deposition (Pet. Ex. 9–10).

## BACKGROUND

The petitioner was the defendant in a criminal case, docket number CR-01-0499262, in the Judicial District of New Haven, in which he was charged with murder in violation of General Statutes § 53a-54a and carrying a pistol without a permit in violation of General Statutes § 29-35. The jury found the petitioner not guilty of murder, but found him guilty of the lesser included offense of manslaughter in the first degree with a firearm in

---

[1] The petitioner restates this claim in Count Two of the Amended Petition and makes specific reference to our Appellate Court's decision in *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 851 A.2d 313, cert. denied, 271 Conn. 914, 859 A.2d 569 (2004). The court can discern no substantive difference between the plea bargain offer claims set forth in the two counts. Consequently, the court's analysis of the claim in Count One applies with equal force to the claim asserted in Count Two.

violation of General Statutes § 53a-55a and of the carrying a pistol without a permit charge. The trial court sentenced the petitioner to a total effective sentence of thirty-two years to serve. The petitioner was represented at the trial court level by Attorney Farver.

The petitioner appealed his conviction to the Appellate Court, where he raised two grounds. First, he argued that the trial court violated his due process rights by marshaling the evidence in favor of the state. Second, he argued that the prosecutor committed misconduct that resulted in a denial of the petitioner's due process rights to a fair trial. The appellate court rejected the petitioner's claims and affirmed his convictions. *State* v. *Little*, 88 Conn. App. 708, 870 A.2d 1170, cert. denied, 274 Conn. 916, 879 A.2d 895 (2005). Attorney Condon represented the petitioner both on his appeal and his unsuccessful petition for certification to our Supreme Court.

As set forth by our Appellate Court, the jury reasonably could have found the following facts. "On the evening of August 16, 2000, the [petitioner] was walking with four young women along the sidewalk on Lilac Street in New Haven. The victim, Kishawn Council, drove a black car alongside the group as it walked. There were three other men in the victim's car. The victim called out to the women to get their attention, and the [petitioner] began to stare into the victim's car. The victim asked the [petitioner], 'What you looking at?' and the [petitioner] and the victim began to argue. The victim's car continued to follow alongside the group as the two men argued.

"When the [petitioner] and the women reached the corner of Lilac and Newhall Streets, they turned right and continued down Newhall Street. The victim followed the group and then stopped his car on Newhall Street. The victim got out of his car and approached

the [petitioner]. The [petitioner] picked up a stick and continued to argue with the victim. The victim punched the [petitioner] in the face, and the [petitioner] tried to hit the victim with the stick. The victim began to choke the [petitioner] to the point where the [petitioner] was 'on his tippy-toes about to come off his feet.' The two men then fell to the ground as the [petitioner] tried to break free.

"A bystander broke up the fight and separated the two men. The victim returned to his car, and the [petitioner] ran across the street to a friend who was standing nearby. The [petitioner] yelled to his friend, asking him for a gun. The [petitioner's] friend initially refused but gave a nine millimeter black handgun to the [petitioner] after he saw the victim reach inside the car. Armed with the gun, the [petitioner] started to run after the victim. The [petitioner] chased the victim in between two houses on Lilac Street and then fired at the victim from the driveway between the two houses.

"The next morning, one of the occupants of the house at 25 Lilac Street found the victim's body on the back steps of the house. The cause of death later was determined to be a gunshot wound to the jaw, which traveled through the victim's neck causing extensive bleeding. The [petitioner] surrendered himself to the police on April 1, 2001, and he was arrested. He was charged with murder and carrying a pistol without a permit. A jury found the [petitioner] guilty of the lesser included offense of manslaughter in the first degree with a firearm and of carrying a pistol without a permit." Id., 710–11. Additional facts will be discussed as necessary.

## LEGAL STANDARD

"The principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate

fundamental fairness. . . . To mount a successful collateral attack on his conviction, a prisoner must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal. . . . In order to demonstrate such a fundamental unfairness or miscarriage of justice, the petitioner should be required to show that he is burdened by an unreliable conviction." (Citations omitted; internal quotation marks omitted.) *Summerville* v. *Warden*, 229 Conn. 397, 419, 641 A.2d 1356 (1994). Here, the petitioner claims that the ineffective assistance of his trial and appellate counsel has led to such a result. "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct

the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial [or appellate] strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 80 Conn. App. 499, 504, 835 A.2d 1036 (2003), cert. denied, 267 Conn. 918, 841 A.2d 1190 (2004). In particular, counsel's decision not to call certain witnesses or offer certain evidence for strategic reasons is entitled to this strong presumption of reasonableness. *Grant* v. *Commissioner of Correction*, 103 Conn. App. 366, 368, 928 A.2d 1245, cert. denied, 284 Conn. 921, 933 A.2d 723 (2007).

As to the prejudice prong, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland* v. *Washington*, supra, 466 U.S. 691–92. Consequently, the petitioner must affirmatively show that his counsel's performance had an adverse impact on the defense. Id., 693. Put another way, in order to meet the prejudice prong, the petitioner must prove that "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694.

Our Supreme Court recently refined the prejudice standard as it relates to claims of ineffective assistance of appellate counsel. In *Small* v. *Commissioner of Correction*, 286 Conn. 707, 720–22, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008), the court determined that the proper question is not whether there is a reasonable probability that a new trial would lead to a different outcome but for appellate counsel's error, but instead whether there is "a reasonable probability that, but for his counsel's [error, the petitioner] would have prevailed on his appeal." (Internal quotation marks omitted.) Id., 720. "[T]o determine whether a habeas petitioner had a reasonable probability of prevailing on appeal, a reviewing court necessarily analyzes the merits of the underlying claimed error in accordance with the appropriate appellate standard for measuring harm." Id., 722. The court emphasized that "the task before [the court] is not to conclude definitively whether the petitioner, on appeal, would have prevailed . . . . Rather, the task before [the court] is to determine, under *Strickland*, whether there is a *reasonable probability* that the petitioner would have prevailed on appeal." (Emphasis in original.) Id., 731.

## DISCUSSION

### I

First, the petitioner claims that Attorney Farver failed to inform him of a plea bargain offer from the state. The following additional facts are relevant to this claim.

On or about September 12, 2002, several months before the petitioner's trial began, Attorney Farver had

a pretrial conference with Attorney Waddock and the court, *Fasano, J.* During that conference there was some discussion about a possible resolution of the petitioner's case. Both Attorney Waddock and Attorney Farver testified that Attorney Waddock said during the conference that he would consider reducing the murder charge to manslaughter with a firearm if the petitioner was willing to plead guilty to that charge. That testimony was corroborated by Attorney Farver's brief notes of the conference. (Pet. Ex. 1.) At no time before, during, or after that conference did Attorney Waddock or the court convey any specific offer to Attorney Farver. Attorney Farver could not say whether he conveyed Attorney Waddock's overture to the petitioner. The petitioner testified that it was never conveyed. Nevertheless, Attorney Farver testified credibly that he had talked to the petitioner on a number of occasions regarding the possibility of negotiating a plea in his case, and that the petitioner steadfastly refused to consider pleading guilty to anything. The petitioner's position did not change from the beginning of Attorney Farver's representation of the petitioner through the conclusion of the petitioner's trial. The petitioner admitted that he told Attorney Farver that he was not interested in pleading guilty, but claimed he would have been willing to consider an offer of something around twenty years.

The petitioner now claims that he was deprived of the opportunity to negotiate for such an offer because Attorney Farver never told him about Attorney Waddock's overture. He makes this argument despite the lack of any evidence that the state would have ever made such an offer. For the reasons set forth below, the petitioner's argument is without merit.

The law is clear that defense counsel has an obligation to meaningfully explain to his client any plea offer made by the state. *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 851 A.2d 313, cert. denied,

271 Conn. 914, 859 A.2d 569 (2004). In *Sanders*, the Appellate Court affirmed the habeas court's conclusion that failure to communicate an offer constituted deficient performance under the first prong of *Strickland*. Id., 548–52. It further held that where the habeas court found that there was evidence that the petitioner would have accepted the offer had it been communicated, the prejudice prong of *Strickland* was also met. Id., 552–53. Consequently, the court affirmed the habeas court's decision, which ordered that the petitioner's sentence be reduced to the "plea offer pending his entering of guilty pleas in accordance with the terms of the offer." Id., 547.

The problem for the petitioner is that the facts of this case are a far cry from those in *Sanders*. In *Sanders*, there was a firm offer that the prosecutor communicated to the petitioner's counsel. The court found that the offer was never meaningfully communicated to the petitioner. The petitioner also testified that had he been aware of the offer he would have accepted it. Finally, the sentence the petitioner received after being found guilty at trial was indisputably longer than the offer the state had made. None of those facts are present here.

First, the evidence is undisputed that Attorney Waddock never made an offer to Attorney Farver. The only thing he did was suggest a possible reduced charge, if the petitioner was willing to plead guilty. Attorney Waddock never suggested a possible sentence should the petitioner be willing to plead to the lesser charge. Consequently, unlike in *Sanders*, there was nothing that Attorney Farver could have conveyed to the petitioner that was capable of acceptance.

Second, the court credits Attorney Farver's testimony that the petitioner steadfastly refused to discuss any resolution of his case short of a trial. His position remained unchanged through the conclusion of trial.

Attorney Farver having heard the petitioner repeatedly state his position that he wanted a trial, the court cannot say it was deficient performance for Attorney Farver not to convey Attorney Waddock's overture that was premised on the petitioner completely changing his position.

Third, the petitioner testified that he would have considered an offer of approximately twenty years. There was absolutely no evidence that such an offer would have ever been made. Consequently, unlike in *Sanders*, the petitioner has presented no evidence that he would have accepted what was on the table. Even if the court were to consider Attorney Waddock's reference to the lesser included offense of manslaughter with a firearm a firm offer, which it was not, there is no evidence that the petitioner was willing to accept the maximum penalty of forty years to which he would have been exposed under that statute. The court was presented with nothing more than the petitioner's wishful thinking that Attorney Waddock would have agreed to a sentence of approximately half the maximum, or less. Put another way, the petitioner cannot meet his burden of proving prejudice by showing he would have accepted an offer that was never made.

Finally, unlike in *Sanders*, the petitioner has presented no evidence that he did worse at trial than he would have done through a plea. This case might be different if the petitioner had been found guilty of murder and given a longer period of incarceration than would have been available for the lesser charge suggested by Attorney Waddock. That, however, is not what happened. The petitioner was acquitted of the murder charge and found guilty of the same manslaughter charge Attorney Waddock was willing to consider if the petitioner had been willing to plead guilty. The trial court sentenced the petitioner to thirty years of

incarceration on that charge, and a total effective sentence (including the pistol without a permit charge) of thirty-two years. Both sentences are below the maximum of forty years to which the petitioner could have been sentenced had he pled guilty just to the manslaughter charge. Because there is absolutely no evidence that the petitioner would have received a lesser sentence had he pled guilty, he has failed to meet his burden to prove prejudice under the second prong of *Strickland.*

Recognizing that this case diverges significantly from the facts in *Sanders,* the petitioner asks the court to apply the holding from a decision of the Tennessee Supreme Court. In *Harris* v. *State,* 875 S.W.2d 662 (Tenn. 1994), the petitioner moved to set aside his conviction for assault with intent to commit murder, for which he received a sentence of thirty-five years to serve. He claimed that he received ineffective assistance of counsel because his trial attorney failed to communicate to him an offer of five years to serve.[2] The postconviction court, the intermediate court of appeals, and the Tennessee Supreme Court all agreed that the petitioner had established that his trial counsel was ineffective because he did not communicate the state's offer to the petitioner. They also all agreed that the petitioner was prejudiced because he received a sentence after trial much longer than what he would have received had he accepted the state's offer. In these respects, *Harris* is no different than *Sanders.*

What distinguishes the two cases is what occurred when James D. Harris' postconviction petition was first assigned in the trial court. The matter was originally

---

[2] The decision in *Harris* refers to the petitioner's request for "post-conviction relief . . . ." *Harris* v. *State,* supra, 875 S.W.2d 663. Although the court does not specifically mention the writ of habeas corpus, it does apply the *Strickland* test to trial counsel's conduct. Consequently, the Tennessee "post-conviction" proceeding appears to be the functional equivalent of our habeas corpus procedure.

assigned to the same judge who had sentenced Harris after his conviction trial. That judge entered a detailed "order of recusal and opinion"; (internal quotation marks omitted) id., 664; in which he recounted the history and facts of the case and then stated, "this Court must conclude that the plea offer addressed in the Petition would have been rejected by the Court and another one would not have been presented for acceptance by the State. . . . A new trial will not address the issue . . . . If the Court sets the conviction aside and requires the District Attorney General to re-submit the plea for the Defendant's consideration, in all honesty, this court would reject the plea, and would have originally had it been submitted to this Court." (Internal quotation marks omitted.) Id. The state relied on this language to argue that the petitioner was not prejudiced because the "offer" was never really available if the trial judge would not have accepted it. Id.

The court rejected the state's argument. It held that the petitioner had met both prongs of *Strickland*. Id., 664–65. At the same time, though, it recognized that the petitioner was not entitled to a negotiated sentence that was not approved by the court. Consequently, it ordered the case "remanded to the trial court for a hearing by a new judge in which the State is directed to reinstate its original guilty plea offer and negotiate in good faith. If accepted by the defendant, the trial court may utilize its discretion to accept or reject this or any other plea agreement which may be negotiated. Otherwise, the case will stand for trial in due course." Id., 667.

The petitioner here argues that this court should order a similar remedy to address Attorney Farver's failure to communicate Attorney Waddock's overture. While creative, the petitioner's argument stretches the reasoning of *Harris* too far. As noted above, here there is no evidence of a concrete offer, and no evidence that

the petitioner did worse at trial than he would have done had a plea been negotiated. Furthermore, the court credits Attorney Farver's testimony that the petitioner repeatedly told him prior to trial that he was unwilling to enter into any plea agreement. Having taken such a steadfast position prior to trial, the petitioner's claim now that, had he known of Attorney Waddock's overture, he would have been willing to negotiate is just not credible.

Unlike in *Sanders* and *Harris*, the evidence presented here fails to prove either deficient performance or prejudice. Consequently, the petitioner's claim regarding the overture from Attorney Waddock is rejected.

## II

The petitioner's second claim is that Attorney Farver failed to properly question Darrin Stanley. The following additional facts are relevant to this claim. The state claimed at the petitioner's criminal trial that Stanley either gave the petitioner the gun used to kill the victim or showed him where the gun was. Prior to trial, Stanley gave the police a twenty-eight minute tape-recorded statement in which he admitted at least having near him a gun the petitioner retrieved shortly after his fight with the victim.[3] At trial, Stanley testified in response to questions from both Attorney Waddock and Attorney Farver that his recorded statement was not the truth. (Resp. Ex. A., Tr. 5/15/2003, pp. 13–16, 59.) In light of Stanley's testimony, the state offered the tape-recorded

---

[3] While both the tape-recorded statement and a transcript of the recording were admitted into evidence at the petitioner's criminal trial, neither was provided to the court in this proceeding. Thus, it is unclear exactly what Stanley told the police regarding the gun. A review of the questioning of Detective Bashta and the attorneys' closing arguments provides enough information for the court to conclude that Stanley, at the very least, told the police when he was being recorded that he had the gun in his possession and dropped it near him, where the petitioner found it.

statement as a full exhibit under *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), and its progeny. The court admitted the statement over Attorney Farver's objection.

The statement was admitted through the testimony of Detective John Bashta, one of the detectives who interviewed Stanley and recorded the statement. During his voir dire examination of Detective Bashta, Farver brought out the fact that Stanley was questioned for approximately two hours before the tape recorder was turned on. (Id., pp. 25–26, 31.) Attorney Farver got Detective Bashta to admit that during those first two hours Stanley denied giving a gun to the petitioner or showing the petitioner where he could find a gun. (Id., pp. 51–52.) Detective Bashta also admitted on cross-examination that Stanley only admitted to involvement with the gun after Bashta told Stanley that other witnesses told the police that Stanley did give a gun to the petitioner. (Id., pp. 52–53.) Detective Bashta further acknowledged that while he met Stanley at his home with his mother, the interview and tape recording were done at the police station without Stanley's mother there. (Id., pp. 53–54.) Farver was also able to establish through Detective Bashta that Stanley was only sixteen years old at the time, did not read well, and was in a special education class in school. (Id., p. 49.) He also established that Stanley was never given a transcript of the tape-recorded interview to review for accuracy, nor did he sign such a transcript indicating that the statement was true. (Id., p. 27.)

The state also introduced the testimony of three other witnesses, James Sessler, David Bethea, and Esther Massey, who all testified that the petitioner approached Stanley looking for a gun. (Resp. Ex. A., Tr. 5/13/2003, pp. 57–60, 142–47; Tr. 5/15/2003, pp. 76–77.) Sessler testified that Stanley handed the gun to the petitioner.

(Resp. Ex. A, Tr. 5/15/2003, p. 77.) Bethea and Massey both testified that they heard the petitioner ask Stanley for a gun and saw the petitioner "pat down" Stanley's body in apparent search of the weapon. (Resp. Ex. A, Tr. 5/13/2003, pp. 60, 147.) Bethea also testified that after the patdown, he saw the petitioner pick up the gun, which was lying near a fence close to Stanley. (Id., pp. 60–61.)

The petitioner claims that Attorney Farver's performance was deficient because he did not ask Stanley enough questions about the gun. In particular, he claims that Attorney Farver should have specifically asked Stanley if he gave a gun to the petitioner, had a gun near him or showed the petitioner where to get a gun. The petitioner called Stanley as a witness in this matter, and Stanley testified that he never made a gun available to the petitioner. Attorney Farver testified that he made a strategic decision not to ask Stanley those specific questions because he did not know what Stanley would say. Stanley had testified that his statement to the police was untruthful, and included in that statement was Stanley's statements about a gun being available to the petitioner. According to Attorney Farver, the admission that the statement was untruthful was enough for Farver to argue to the jury that Stanley denied giving the petitioner the gun or seeing him retrieve a gun.

Based on the evidence presented, the court cannot find that Attorney Farver's performance regarding Stanley was ineffective. The jury heard from Stanley more than once, including during Attorney Farver's questioning, that his statement to the police was not true. Attorney Farver's decision not to ask any follow-up questions was a tactical one entitled to a strong presumption of reasonableness. That presumption has not been overcome here. Attorney Farver decided to attack Stanley's statement in other ways. During his cross-examination of Detective Bashta, Attorney Farver

undermined the reliability of the statement, particularly as it related to Stanley's discussion of a gun and the petitioner. In his closing argument, Attorney Farver emphasized the manner in which the police obtained Stanley's recorded statement and the fact that Stanley testified at trial that the statement was not the truth. In doing so, he focused specifically on the issue of whether Stanley provided the petitioner with a gun. While petitioner in hindsight might wish that Attorney Farver had asked Stanley a couple of more questions, Attorney Farver's approach to the issue was very reasonable. He first objected to the admission of Stanley's statement. When it was admitted, he took a calculated and sound approach to undermining its reliability. There was no deficient performance.

Nor has the petitioner established any prejudice. As noted above, three other witnesses testified that the petitioner sought a gun from Stanley, and two testified that they saw the petitioner get a gun either directly from Stanley or from his immediate vicinity. The jury obviously believed these witnesses over Stanley's denial that his statement to the police was untrue. There is no reasonable probability that the result would have been different had Stanley also explicitly told the jury, "I did not give a gun to Troy Little." Consequently, the petitioner has also failed to meet the second prong of *Strickland* as to this claim.

### III

The third issue raised by the petitioner, as to both trial and appellate counsel, relates to the trial court's consciousness of guilt charge. The following additional facts are relevant to this claim. Shortly after the victim was shot, the petitioner left Connecticut for North Carolina. The petitioner testified before the jury that he went to North Carolina to visit a friend. (Resp. Ex. A., Tr. 5/19/2003, pp. 82–83.) He spent three weeks in North

Carolina before traveling to New York City. (Id.) The petitioner testified that upon arriving in New York he called his family for the first time since he left Connecticut and learned that the New Haven police were looking for him in connection with the victim's death. (Id., pp. 83–84.) The petitioner testified at his criminal trial and before this court that he did not immediately contact the New Haven police or return to Connecticut because he was "scared" of the police. (Id.) Instead, he stayed in New York for five or six months until a family friend convinced him to turn himself in. (Id., pp. 84–85.) The petitioner did so on April 1, 2001. (Id., p. 87.) Based on the petitioner's flight from Connecticut following the victim's shooting, the state requested that the court give a consciousness of guilt charge to the jury. Attorney Farver objected to the charge because it would highlight the evidence as opposed to allowing the jury to receive it as it would any other evidence. (Id., Tr. 5/20/2003, p. 4.) Attorney Farver did not have any objection to the language of the trial court's proposed charge. (Id.) Nor did Attorney Farver propose any additional language to the charge. The court overruled Attorney Farver's objection and gave the following charge:

"Now, I'm going to speak with you concerning a concept we call consciousness of guilt. The law of our state recognizes a concept which is known as consciousness of guilt. When a person is on trial for a criminal offense, it is proper for you to consider evidence of the defendant's conduct subsequent to the alleged criminal offense to show that the defendant had a guilty knowledge. In other words, this evidence would tend to show that the defendant was conscious of his own guilt, and his actions were in accordance with a guilty mind.

"You have heard testimony which the state asserts showed that the defendant, knowing that he was wanted for the murder of Mr. Kishawn Council, sought to avoid apprehension and fled the state. This evidence of flight

is admissible to show a guilty consciousness and, if believed, is a circumstance which, when considered together with all the facts of the case, may justify a finding of guilty. It is for you, however, to decide whether the defendant's actions reflected a guilty mind.

"Moreover, should you determine that the defendant's actions do provide evidence of a guilty mind, then it is still for you to determine what weight, if any, you wish to attribute to this evidence." (Id., pp. 69–70.)

After the court concluded its charge, Attorney Farver restated his objection to the consciousness of guilt charge because "it highlights what is simply otherwise simply evidence, and by doing so seems to place it on a pedestal that it does not warrant, and it's like any other circumstantial evidence and certainly should fall within that charge." (Id., pp. 99–100.) Attorney Farver also noted that he was not taking exception to the "actual language used" in the charge. (Id.) On appeal, Attorney Condon did not raise any issues relating to the court's consciousness of guilt charge.

The petitioner first claims that Attorney Farver's performance was deficient because he failed to request innocent explanation balancing language in the consciousness of guilt charge. In particular, he claims that Attorney Farver should have requested that the court tell the jury that the petitioner claims that he went to North Carolina, not to flee from a crime, but to visit a friend. In addition, he stayed in New York City even though he knew the police were looking for him, not because he was trying to evade apprehension, but because he was afraid of the New Haven police. For the reasons set forth below, this claim is rejected.

At the outset, it is important to bear in mind that the trial court was not required to include innocent explanation language in its consciousness of guilt charge. *State* v. *Freeney*, 228 Conn. 582, 594, 637 A.2d

1088 (1994); see *State* v. *Hines*, 243 Conn. 796, 813, 709 A.2d 522 (1998); *State* v. *Luther*, 114 Conn. App. 799, 820, 971 A.2d 781, cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009). In *Luther*, the defendant argued, as does the petitioner here, that by only referring to the state's evidence of flight and not the defendant's innocent explanation, the court's charge was unbalanced and unfairly marshaled the evidence for the state. The court rejected the defendant's argument, holding that "[a]lthough the trial court's instruction did not contain an innocent explanation provision, it explicitly instructed the jury that the evidence of flight did not raise a presumption of guilt. Accordingly, the absence of an innocent explanation did not improperly suggest that the jury should endorse the state's version of the events." *State* v. *Luther*, supra, 820. Similarly, here, the trial court told the jury it was for them to decide whether the petitioner's actions reflected a guilty conscience. The court also told the jury it was for them to determine what weight, if any, to give the evidence of flight. Therefore, it is clear that the trial court's consciousness of guilt instruction was legally correct, and that the petitioner was not entitled to have innocent explanation language included in it.

The petitioner claims that even if the court was not required to include the innocent explanation language, Attorney Farver should have requested it, and had he done so, the court might have included it. Because the trial court was not required to include such language, this argument is, at best, speculative. Furthermore, Attorney Farver testified that it is his practice to always object to the consciousness of guilt charge in its entirety, because he thinks the underlying basis for the charge is flawed. In this case, he articulated this reasoning to the trial court when he objected to the charge. He further testified that, given his overriding objection to the charge, he chooses never to submit

any proposed language regarding it. The court cannot say that such a strategic approach is unreasonable. Putting the entire charge at issue without offering mitigating language can highlight the significance of the legal question on appeal. On the other hand, the inclusion of balancing language might lead a court to conclude that the charge overall was not particularly harmful because it explained both sides' theories. Deciding which objections to raise and how best to preserve an issue for appeal are classic strategic decisions that are entitled to a strong presumption of reasonableness. The petitioner has presented no evidence to overcome that presumption here.

Furthermore, the petitioner has not shown any prejudice. The petitioner explained to the jury his reasons for leaving Connecticut and not returning from New York. The petitioner was the last witness to testify, and he did so the day before the court delivered its charge to the jury. Thus, the jury had an opportunity to consider his innocent explanations, keeping in mind the court's instruction that it was up to them to determine whether the petitioner's actions reflected a consciousness of guilt. The lack of innocent explanation language in the court's consciousness of guilt charge in no way undermines this court's confidence in the outcome of the trial.

Finally, the petitioner claims that Attorney Condon's performance was deficient because he did not raise any issues relating to consciousness of guilt on appeal. In particular, the petitioner claims that Attorney Condon should have raised the objection to the charge which Attorney Farver had properly preserved. This claim is without merit. The fact that Attorney Farver thought the issue might be worth raising on appeal, does not mean that Attorney Condon was required to agree with him. The trial court's consciousness of guilt instruction was legally correct and could only be overturned on appeal if the Appellate or Supreme Court decided to

reverse the long-standing jurisprudence on the subject. Given the long acceptance and approval by those courts of consciousness of guilt instructions, it is not surprising that Attorney Condon would conclude, as he did, that the issue had little chance of success on appeal, and was not worth raising. (Pet. Ex. 10, pp. 15, 26–27, 31.)

Furthermore, Attorney Condon testified that the sole focus of his practice from 1997 through 2005 was representing criminal defendants in appeals. (Id., p. 22.) During that time he handled approximately forty such appeals. (Id.) He testified that his approach to appeals is not to take a "shotgun approach" and raise several issues, but instead to focus on the strongest claims. (Id., p. 24.) He testified that he reviewed the record regarding the consciousness of guilt charge and made a tactical decision not to raise the argument. (Id., pp. 27–28.) Given the state of the law at the time, such a decision was clearly reasonable.

In any event, because the trial court's charge was legally correct, the petitioner can demonstrate no prejudice. Even had Attorney Condon raised the issue, there was no reasonable probability that the petitioner would have succeeded on his appeal. Consequently, he can meet neither prong of *Strickland* and *Small* on this claim.

## CONCLUSION

For all the foregoing reasons, the petition is DENIED.