******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LUIS PEREZ *v.* COMMISSIONER OF CORRECTION
(AC 35332)

Gruendel, Sheldon and Schaller, Js.

*Argued March 10—officially released May 20, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Mary H. Trainer*, assigned counsel, for the appellant (petitioner).

*Leonard C. Boyle*, deputy chief state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Eva B. Lenczewski*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, Luis Perez, appeals following the habeas court granting his petition for certification to appeal from its judgment denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court erred in denying his claims of ineffective assistance of counsel with respect to (1) his violation of probation hearing and (2) his *Alford*[1] plea. We affirm the judgment of the habeas court.

The following factual and procedural history as set forth by the court in its memorandum of decision is relevant to this appeal. "On May 25, 2006, the trial court . . . sentenced the petitioner to ten . . . years incarceration suspended after three and one-half . . . years, followed by three . . . years probation on the charge of attempted assault in the first degree. On November 7 and 19, 2008, the [petitioner] read and signed the standard and special conditions of his probation. One of the standard conditions of the petitioner's probation was that he not violate any law of this state or the United States. After serving the prison portion of this sentence, on November 19, 2008, the petitioner was released and began to serve the probationary portion of his sentence.

"Approximately two months later, on January 6, 2009, the petitioner was arrested and charged with burglary in the first degree in violation of General Statutes § 53a-101, assault in the third degree in violation of General Statutes § 53a-61, threatening in the second degree in violation of General Statutes § 53a-62, and harassment in the first degree in violation of General Statutes § 53a-102b. The 2009 arrest stemmed from an incident that occurred on December 18, 2008, at the residence of the petitioner's cousin, Cyneice Cruz-Soto, the victim. According to the victim, on that date, she and her sister, Christine Soto, had an argument on the telephone. Later that evening, the victim's sister and the petitioner went to the victim's residence to confront her, knocked on the door, and then the petitioner kicked in the door. The petitioner and Soto then entered the victim's residence and assaulted her by kicking and punching her in the face and stomach. Soto was arrested that evening and the petitioner was arrested on January 9, 2009, by warrant. On March 4, 2009, the state filed a part B information charging the petitioner with being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) on the basis that he had been previously convicted of criminal attempt at assault in the first degree, a felony, and served a sentence of more than one year.

"Based on the January, 2009 arrest, on March 4, 2009, the petitioner was arrested by warrant and charged with violating the terms of his probation on the 2006

sentence. . . . [He] . . . hired Attorney Andrea Anderson to represent him on both files. When Anderson received the files from the public defender, she learned that a part B information had been filed by the state. . . . Attorney Anderson . . . discussed the part B information with the petitioner when she appeared in the case and believed that he understood that additional charge and its legal ramifications.

"Plea negotiations between the state and . . . Attorney Anderson [resulted in an] offer on both files of ten years . . . with no special parole. Attorney Anderson explained to the petitioner that if he rejected the ten year plea offer, the court would schedule the [violation of probation charge] for a hearing and [that he] could receive six and one-half years to serve. At the time, the petitioner's exposure on both files was approximately forty-six years, which Anderson explained to the petitioner. The petitioner rejected the ten year offer, and opted for a hearing on the [violation of probation charge].

"Attorney Anderson contacted Attorney David Feliu and asked him to assist her in trying the violation of probation because he had more criminal trial experience. Both Attorney Anderson and Attorney Feliu prepared extensively for the hearing. Attorney Anderson employed an investigator, met with the petitioner and numerous witnesses, went to the scene of the incident and reviewed all of the police reports, witness statements, photographs and medical reports. When Feliu appeared in the case, he reviewed Anderson's entire file, including her notes of interviews, witness statements, and police reports. Feliu was lead counsel during the hearing and believed that he was prepared for the hearing.

"On August 27, 2009, the trial court conducted the hearing on the [violation of probation] charge. During the adjudication stage of the hearing to determine if the petitioner had violated his probation by violating any law of this state by his conduct on December 18, [2008] the state offered the testimony of the petitioner's probation officer, Matthew Generali, the victim, and one of the responding police officers, Hallock Yocher. The petitioner's trial counsel cross-examined each of these witnesses. Through his cross-examination of the victim, Attorney Feliu brought out a number of inconsistencies in her statements, that she had a diagnosis of bipolar disorder, that she did not get along with her sister and that her family did not favor her relationship with her boyfriend. During his cross-examination of Officer Yocher, Attorney Feliu again brought out inconsistencies in the victim's statements.

"The petitioner offered testimony from the victim's mother, Isabel Cole, her aunt, Maribell Sarvis, and the victim's sister, and the petitioner's codefendant. Neither the victim's mother nor her aunt were present at the

victim's residence on December 18, 2008, and therefore could not offer any firsthand accounts of the incident. They were offered as character witnesses as to the victim's reputation for untruthfulness, as well as the family disharmony. Soto testified to her version of events that the victim opened the door when she and the petitioner arrived, that they did not go in the house and that Soto and the victim had a physical altercation and that the petitioner was there but not involved in the fight. She testified that she brought the petitioner with her because she was afraid of the victim's boyfriend. Both of the petitioner's trial attorneys testified at the habeas trial that the petitioner's witnesses did not come across well in court.

"The state's attorney and the petitioner's counsel both made closing arguments at the conclusion of the evidentiary hearing. Attorney Feliu summed up the petitioner's theory of the case, the contradictions in the state's case and the victim's version of events, and argued that Soto was the more credible witness.

"After hearing all of the evidence, the trial court determined that the state had proven by a fair preponderance of the evidence that the petitioner had violated his probation. In its oral decision, the trial court found that 'what this really comes down to is a credibility question.' The court noted certain inconsistencies in the victim's statements, but found her testimony consistent in that the petitioner arrived at her home with her sister, kicked in her door and assaulted her. The trial court also found that the victim's testimony was corroborated by Officer Yocher's testimony. With respect to the petitioner's witnesses, who were all related [to] him, the court pointed out that they all had a motive to protect the petitioner. . . .

"After the petitioner was sentenced on the [violation of probation charge], he began doing 'dead' time[2] on the remaining charges. The petitioner's exposure on the remaining charges was approximately forty years. The state and Anderson resumed plea negotiations in an attempt to resolve the remaining charges. The court offered the petitioner ten . . . years incarceration to be served concurrent with the sentence he received on the probation violation and jail credit back to his arrest on January 6, 2009. Attorney Anderson told the petitioner that if he did not accept the plea offer of ten years concurrent, he faced a possible sentence of forty years on the remaining charges. She explained the charges and gave him copies of the relevant statutes. Although Attorney Anderson did not give the petitioner a copy of General Statutes § 53a-40 (a), the persistent felony offender statute, the court finds that Attorney Anderson explained this charge and its legal ramifications to the petitioner.

"On September 17, 2009, the petitioner accepted the offer and pleaded guilty under the *Alford* doctrine to

burglary in the first degree, assault in the third degree and being a persistent dangerous felony offender. This charge was read to the petitioner outside of the court's presence prior to his plea. The trial court's canvass of the petitioner included questions regarding the persistent felony offender charge, to which the petitioner responded that he understood."

On December 2, 2009, the petitioner brought this petition for a writ of habeas corpus. The habeas court denied his petition, finding that the petitioner did not satisfy his burden with respect to the ineffective assistance of counsel claims. After the court granted the petition for certification to appeal, the petitioner filed the present appeal.

"We begin with the applicable standard of review and the law governing ineffective assistance of counsel claims. The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 76–77, 967 A.2d 41 (2009).

"A criminal defendant's right to the effective assistance of counsel extends through the first appeal of right and is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution." *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). "In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense [by establishing a reasonable probability that, but for the counsel's mistakes, the result of the proceeding would have been different]. . . . Furthermore, [i]n a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . *but by demonstrable realities*." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Farnum* v. *Commissioner of Correction*, 118 Conn. App. 670, 675, 984 A.2d 1126 (2009), cert. denied, 295 Conn. 905, 989 A.2d 119 (2010). "[A] successful petitioner must satisfy both prongs . . . [and the] failure to satisfy either . . . is fatal to a habeas petition." (Internal quotation marks omitted.) *Saucier* v. *Commissioner of Correction*, 139

Conn. App. 644, 650, 57 A.3d 399 (2012), cert. denied, 308 Conn. 907, 61 A.3d 530 (2013).

## I

The petitioner first claims that his trial counsel, Anderson and Feliu, both were ineffective in handling his violation of probation hearing. Specifically, he claims that his attorneys failed to (1) prepare adequately for the hearing, (2) articulate a theory of the defense, (3) cross-examine the victim sufficiently, and (4) produce evidence that the door was not damaged, as described by the victim. We do not agree.

Rather, we agree with the habeas court's conclusion that the petitioner failed to prove prejudice under *Strickland*. "To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, supra, 286 Conn. 713.

In his brief, the petitioner identifies all of the actions or inactions by his counsel that allegedly constitute deficient representation. What the petitioner has failed to do, however, is demonstrate how these alleged deficiencies prejudiced him in a way that would have altered the outcome of the probation violation hearing. The petitioner is required to demonstrate that, but for his counsel's ineffective assistance, there is a reasonable probability that the court would not have revoked his probation or sentenced him to a period of six years to serve. He has not satisfied this standard through argument in his appellate brief or through examination of witnesses at the habeas trial. In his brief he states that "[h]ad Attorneys Anderson and Feliu presented the strong case that was available to them at the time of the [violation of probation] hearing, the outcome clearly would have been different." This blanket statement does not satisfy the standard for demonstrating prejudice.

Furthermore, at the habeas trial, the petitioner called various people to testify, including Anderson, Feliu, the victim, the victim's landlord, and the victim's boyfriend. Our review of the record reveals that the petitioner has not demonstrated by a reasonable probability that the outcome would have been different had his counsel's alleged ineffectiveness not occurred. We concur with the court's finding that "the attorneys thoroughly investigated the case, prepared for the hearing, prepared their witnesses and provided and explained their theory of the defense during cross-examination of the witnesses and in Attorney Feliu's closing argument." The habeas court also properly noted that the trial court's decision turned on credibility, and stated that "the trial court credited the testimony of the unbiased responding police officer, who arrived on the scene minutes after

the assault to witness the damage to the door and the petitioner's injuries. Officer Yocher's testimony corroborated the victim's testimony and undermined the testimony of Soto that she and the petitioner knocked gently on the door [and] had not damaged it." The habeas court concluded, therefore, that the allegations of deficient performance raised by the petitioner would not have been sufficient to alter the outcome of the proceeding, as none of the claims addressed Officer Yocher's testimony, which was key to the trial court's credibility determinations. We agree fully with this analysis.

In addition, the habeas court addressed the issue of the damaged door. The petitioner claims that his attorneys' conduct was deficient because they did not call the victim's landlord, who he claims would have impeached the victim's testimony by testifying that the door to her apartment was not replaced. The landlord testified at the habeas hearing, but had no recollection of the events that occurred in December, 2008, and could not recall whether he had been asked to fix the door. The victim's boyfriend was also present at the habeas hearing, however, and testified that he was the one who found the victim injured after the incident and the one who fixed the door.

We therefore conclude, like the habeas court, that the petitioner failed to prove prejudice under the *Strickland* test. As a result, the petitioner's claim of ineffective assistance of counsel necessarily fails. See *Saucier* v. *Commissioner of Correction*, supra, 139 Conn. App. 650.

## II

The petitioner also claims that Anderson was deficient in advising him to plead guilty under the *Alford* doctrine to one count of burglary in the first degree, one count of assault in the third degree, and being a persistent dangerous felony offender. He then concludes that he was prejudiced by her deficient performance. We disagree.

"[T]he United States Supreme Court modified the prejudice prong of the *Strickland* test [such that] for claims of ineffective assistance when the conviction resulted from a guilty plea, the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 576, 941 A.2d 248 (2008).

The petitioner argued before the habeas court that "had the part B charge been adequately explained to him, he would not have pleaded guilty but would have insisted on going to trial." The court did not find that testimony credible but, rather, found that "[a]t the time the [trial] court made its offer of ten years concurrent,

the petitioner had been sentenced to and was already serving a six year sentence on the [violation of probation]. Upon being sentenced on that charge, the petitioner's preconviction jail credit was applied to the [violation of probation] sentence, and he was doing dead time on the assault/burglary charges. The petitioner's exposure on the assault/burglary was forty years due to the part B enhancement. The petitioner had a significant violent felony history that was known to the court and would be made known to any sentencing judge after a trial. In view of this, the court's offer of ten years concurrent plus application of the approximately nine months of jail credit was a very reasonable offer under the circumstances. In essence, since the petitioner was already serving six years on the [violation of probation], he was receiving only four years additional time (and less with the jail credit), for the new and serious charges. . . .

"Based on his testimony at the habeas trial, the petitioner appeared to be under the impression that he could 'beat' the new charges and that the state could not prove the burglary charge. If the state could not prove the burglary charge, then he would not be exposed to the forty years in jail, if convicted after a jury trial. He claims this was because he was innocent of the charges. However, the state had significant evidence to establish the burglary charge, and in particular, that the petitioner went with Soto to confront the victim, gained entrance to the victim's residence by kicking in the door for the purpose of assaulting her, and did in fact assault her. The petitioner was not a novice to the criminal justice system, having been convicted of a serious violent felony in the past, and the court believes [he] was aware of the risks of going to trial. He accepted the plea offered to him because it was a good offer. He would not have risked going to trial and receiving a potentially greater sentence."

"It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . It is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 553, 851 A.2d 313, cert. denied, 271 Conn. 914, 859 A.2d 569 (2004). "As the arbiter of facts, the court was required to evaluate the evidence and was permitted to make all reasonable and logical conclusions from the facts presented." Id., 552. It was therefore permissible for the court to find that he would not have accepted the plea offer, despite his statement that "had the part B charge been adequately explained to him, he would not have pleaded guilty but would have insisted on going to trial." Consequently, the court's factual conclusion was not clearly erroneous.

We conclude that the petitioner failed to prove that he was prejudiced by any alleged deficiencies of his counsel with regard to his *Alford* plea. His ineffective assistance of counsel claim therefore fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 204, 842 A.2d 567 (2004).

[2] We note that " 'dead time' " is prison parlance for presentence confinement time that cannot be credited because the inmate is a sentenced prisoner serving time on another sentence." *Griffin* v. *Commissioner of Correction*, 123 Conn. App. 840, 843 n.3, 3 A.3d 189 (2010).