**UNITED STATES of America,**
**Appellee,**

v.

**Michael KELLY, also known as Peter Smith, Defendant–Appellant.**

**Docket No. 03–1418.**

United States Court of Appeals, Second Circuit.

June 3, 2004.

Christopher S. Ciaccio, Rochester, New York, for Appellant.

Brett A. Harvey, Assistant United States Attorney, Buffalo, New York, for Appellee.

Present: WINTER, STRAUB, and LAY,* Circuit Judges.

### SUMMARY ORDER

Michael Kelly appeals from his conviction and sentence following a guilty plea before Judge Siragusa. Kelly pled guilty to conspiring to import 500 grams or more of cocaine in violation of 21 U.S.C. § 963. On appeal, Kelly argues that: (i) the district court erred in imposing a two point aggravating role adjustment, thereby rendering Kelly ineligible for safety valve treatment; and (ii) he received ineffective assistance of counsel during plea negotiations and counsel's explanation of the agreement to Kelly.

The conspiracy involved Kelly and his co-defendant Paul Virgo sending couriers from Rochester, New York to Jamaica to pick up ceramic plates filled with cocaine and bring them back in the couriers' luggage. On two occasions, Kelly directed his girlfriend, Lena Leistman, to buy plane tickets to Jamaica in the names of persons she did not know. On the first occasion, she bought tickets for two persons with female names. On the second occasion,

---

* United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designa-

tion.

she bought a ticket in Price's name. Kelly provided both the names and cash for the tickets.

Sharita Price, a girlfriend of Virgo, was a courier. She testified that Virgo and Kelly approached her "together" and "at the same time" "about taking a trip to Jamaica." Virgo explained the details of the trip; at least before she left Jamaica, Price became aware that she would be transporting cocaine. Kelly was present while Virgo packed Price's suitcase for her, and in discussing whether it was big enough, Kelly stated that "she's going to bring back 12 of them." Price was arrested upon her return from Jamaica at John F. Kennedy Airport. The arresting officers asked Price to call Virgo. She called him several times and spoke with both Virgo and Kelly, though mainly with the former. They asked if she had her bag and if she had been arrested. She responded that she had not, and they told her to take a taxi out of the airport as soon as possible. Upon Price's release and return to Rochester, she attempted to call Virgo several times, but only Virgo's nephew and Kelly returned her phone calls. Price met with Kelly and the nephew to discuss whether she would use a lawyer they knew and when they would leave her the money she was owed for the trip. Price never received any money.

The district court's imposition of the role enhancement under U.S.S.G. § 3B1.1 is subject to a mixed standard of review; we review the factual findings concerning the defendant's role for clear error, and the legal determination that those findings support an enhancement *de novo*. *United States v. Tian*, 339 F.3d 143, 156 (2d Cir. 2003) (reviewing role enhancement under § 3B1.1(a)). Under U.S.S.G. Section 3B1.1(c), a defendant's offense level may be increased by two levels if the defendant was "an organizer, leader, manager, or supervisor" of a participant in a criminal activity, where that activity involved fewer than five participants. The district court held that Kelly was "at least a co-leader, if you will, with Mr. Virgo, but certainly it fits the definition of manager or supervisor."

A defendant may properly be considered a manager or supervisor "if he exercised some degree of control over others involved in the commission of the offense or played a significant role in the decision to recruit or to supervise lower-level participants." *United States v. Burgos*, 324 F.3d 88, 92 (2d Cir.2003) (internal quotations and alterations omitted).

■ Kelly directed the purchase by Leistman of plane tickets for three individuals, one of whom was Price. The record clearly establishes that Price's ticket was related to the conspiracy, and, under a preponderance of evidence test, a similar inference could be drawn by a trier of fact as to the purpose of the other two tickets. The record showed that Kelly and Virgo got drugs from Jamaica through couriers. The *modus operandi* of Kelly using Leistman to purchase the first two tickets was the same as the purchase in Price's name, and the record discloses no innocent reason for Kelly to provide names and cash to Leistman to purchase tickets to Jamaica for unknown persons.

Moreover, Kelly, along with Virgo, approached Price about the trip, helped pack her bags, and had input into the size of the bag that was needed. Kelly also functioned as Price's contact after her return from Jamaica, talking on the phone with her during her arrest, discussing what lawyer she should hire, and attempting to arrange for her to be paid.

Kelly's direction and provision of cash to Leistman to purchase airline tickets, his pre-trip aiding of Price, and post-trip in-

structions to Price are legally sufficient to support a finding of supervision. This conclusion is not undermined by the fact that Virgo may have been in overall command. A defendant may be a manager or supervisor if he is "substantially involved in" his co-defendant's "decisions concerning the recruitment and supervision of" a participant, even if a co-conspirator is the main supervisor of that participant. *United States v. Greenfield,* 44 F.3d 1141, 1147 (2d Cir.1995). Kelly directed Leistman on the purchase of three plane tickets for couriers, provided the names, and paid cash to Leistman for the tickets. Also, even if Kelly was not Price's main or only supervisor, he was substantially involved in Virgo's decisions about recruiting and supervising Price. Thus, the two point role enhancement was proper, and Kelly was consequently ineligible for safety valve treatment.

■ Kelly has not demonstrated that he suffered from ineffective assistance of counsel. To do so, Kelly was required to "show that the attorney's performance fell below an objective standard of reasonableness and that the outcome of his case would have been different had the attorney performed adequately." *Fountain v. United States,* 357 F.3d 250, 254 (2d Cir. 2004) (internal citation omitted). In the context of a claim that counsel was ineffective during plea negotiations, the prejudice prong of this test requires a defendant to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (*quoted in United States v. Couto,* 311 F.3d 179, 187 (2d Cir.2002)).

Kelly does not even claim that he satisfies the *Hill* requirements. Rather, Kelly claims only that absent his counsel's alleged errors, Kelly "might have elected to go to trial." Even if that were true, it would not be enough to show prejudice. Furthermore, after retaining new counsel and learning of his likely sentencing range with the role enhancement, Kelly was given a chance to move to withdraw his plea and chose not to. *See United States v. Perez,* 129 F.3d 255, 261 (2d Cir.1997) (no prejudice could be established where defendant was given opportunity to withdraw his plea, was fully aware of likely sentence, and chose not to withdraw).

For the foregoing reasons, the judgment of the district court is AFFIRMED.