******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# LENWORTH CHARLES GRANT *v.* COMMISSIONER
## OF CORRECTION
### (SC 20561)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

The petitioner, who had been convicted, on a guilty plea under *North Caro-lina* v. *Alford* (400 U.S. 25), of risk of injury to a child and strangulation in the third degree in connection with a domestic violence incident in which he assaulted the victim in the presence of their minor child, sought a writ of habeas corpus, claiming ineffective assistance of trial counsel. The petitioner's trial counsel, C, had engaged in numerous plea negotiations, and the state made several plea offers, each one calling for a guilty plea and incarceration. Subsequently, C convinced the trial court to fully suspend the period of incarceration in light of the victim's recantation with respect to the incident. The petitioner ultimately pleaded guilty in exchange for a suspended sentence and probation. In his habeas petition, the petitioner alleged that C's performance violated his right to the effective assistance of counsel insofar as C failed to inquire about the petitioner's immigration status and failed to properly advise him of the immigration consequences of his guilty plea. Specifi-cally, the petitioner alleged that C had access to information that the petitioner was not a United States citizen and failed to inform the peti-tioner that he would almost certainly be subject to deportation as a consequence of his guilty plea to the felony of risk of injury to a child. At his habeas trial, the petitioner presented testimony from C and the prosecutors involved in the petitioner's criminal case. The petitioner also testified before the habeas court that he did not know whether he would have gone to trial if he had been properly advised of the immigra-tion consequences of his plea. The habeas court found that the prosecu-tors testified credibly that they were not willing to consider dropping the risk of injury charge against the petitioner and, therefore, that there was no evidence that there was another, more favorable plea offer that was available to the petitioner. The habeas court concluded that, even if it were to presume that C's performance was deficient, the petitioner did not prove that he would have rejected the plea offer and proceeded to trial, or have accepted an alternative offer. Accordingly, the habeas court denied the petitioner's habeas petition. The petitioner ultimately was deported after the habeas court rendered judgment denying his petition. On the granting of certification, the petitioner appealed. *Held* that the habeas court properly denied the petitioner's habeas petition, as the petitioner failed to meet his burden of establishing that, but for C's allegedly deficient performance, there was a reasonable probability that he would have rejected the state's plea offer and proceeded to trial, and, therefore, the petitioner failed to establish prejudice: the petitioner admitted at his habeas trial that, even with the benefit of hindsight and the knowledge that he would be deported, he was not sure that he would have proceeded to trial; moreover, notwithstanding the petition-er's claims that there was a reasonable probability that he would have rejected the state's plea offer and proceeded to trial insofar as the state's case against him was not very strong and his testimony indicated that he would have made decisions that favored better immigration conse-quences, those factors could not overcome the petitioner's own testi-mony at the habeas trial that he still was not sure whether he would have proceeded to trial; furthermore, the habeas court made a specific and undisputed factual finding that there was no more favorable plea offer available to the petitioner in light of the credible testimony of the prosecutors that they would not have considered dropping the risk of injury charge against the petitioner, and the petitioner's testimony during the habeas trial that he would have approached the plea agreements "differently" was of no legal import insofar as he had failed to establish that there were any reasonably probable and more favorable alternatives available to him.

Argued October 20, 2021—officially released April 12, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, geographical area number nineteen, and tried to the court, *Bhatt, J.*; judgment denying in part the petition, from which the petitioner, on the granting of certification, appealed. *Affirmed.*

*Desmond M. Ryan*, for the appellant (petitioner).

*Sarah Hanna*, senior assistant state's attorney, with whom, on the brief, were *Brian W. Preleski*, state's attorney, *Tanya K. Gaul*, former special deputy assistant state's attorney, and *Kelly A. Masi*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

MULLINS, J. The petitioner, Lenworth Charles Grant, appeals from the judgment of the habeas court denying in part his petition for a writ of habeas corpus.[1] The petitioner claims that the habeas court incorrectly concluded that he did not demonstrate that he had suffered prejudice from the ineffective assistance of his trial counsel insofar as his trial counsel allegedly failed to properly inform him that he would be subject to deportation as a consequence of his guilty plea to a felony. We disagree and, accordingly, affirm the judgment of the habeas court.[2]

The record reveals the following relevant facts and procedural history. The petitioner is a citizen of Jamaica who had resided in Connecticut since 1997 and held a valid green card.[3] In 2014, the petitioner was involved in a domestic violence incident in which the state accused him of assaulting the complainant,[4] his girlfriend and the mother of his child.[5] The incident occurred while the petitioner and the complainant were riding in a motor vehicle with their eleven month old son. The complainant was driving, and an argument ensued between her and the petitioner. The complainant alleged that the petitioner assaulted her by pulling her hair, slapping her and choking her, causing her to nearly lose control of the vehicle while on the highway. Thereafter, the complainant was treated at a hospital for the injuries she sustained. The police took photographs of her injuries, and the complainant gave a written statement detailing this assault. Subsequently, the complainant recanted in statements to the victim's advocate, the New Britain Police Department and the New Britain public defender's office.[6]

As a result of this incident, in the judicial district of New Britain, geographical area number fifteen, the state charged the petitioner with one count each of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), assault in the third degree in violation of General Statutes § 53a-61, strangulation in the third degree in violation of General Statutes (Rev. to 2013) § 53a-64cc, and disorderly conduct in violation of General Statutes § 53a-182.

In the proceedings before the trial court, "[t]he petitioner was represented by Attorney David Cosgrove of the [New Britain public defender's office]. Attorney Cosgrove engaged in numerous plea negotiations on the petitioner's behalf, where the main focus was to avoid incarceration. Attorney Cosgrove attempted to get the petitioner into [substance abuse and domestic violence] treatment to later use as a bargaining chip. The petitioner stopped going to the first program but was then entered into a second program. There were numerous offers made by the state, all of which involved pleas of guilty to felonies and incarceration. From the

outset, the state had taken the position that this case would . . . be resolved [only] if the petitioner served time in prison. Attorney Cosgrove focused his efforts on eliminating that prospect. The first offer involved a sentence of three [years of] incarceration, suspended after service of one year, followed by three [years of] probation. Through further negotiation, the state altered that offer to [reduce] the period of incarceration to eight months. Attorney Cosgrove then convinced the trial court, *Hadden, J.*, to fully suspend the period of incarceration in light of the recantation [by] the complainant and the [substance abuse and domestic violence] treatment the petitioner had [received] during the pendency of this case."[7]

Ultimately, the petitioner pleaded guilty, pursuant to the *Alford* doctrine,[8] to one count each of risk of injury to a child and strangulation in the third degree. The petitioner pleaded guilty in exchange for a court indicated sentence of three years of incarceration, fully suspended, and three years of probation.[9] Approximately one year later, the petitioner was found to have violated his probation and was sentenced to three years of incarceration related to this case.

On July 10, 2017, the petitioner filed a petition for a writ of habeas corpus. He was self-represented at that time. Thereafter, counsel for the petitioner entered an appearance and filed an amended petition. The operative petition in this case is the fourth amended petition filed on August 31, 2018. In that petition, the petitioner alleged two separate counts, claiming ineffective assistance of trial counsel regarding the performance of two different attorneys with respect to two separate guilty pleas, one related to his conviction of possession of narcotics, originating out of Manchester (Manchester case), and one related to the conviction of risk of injury to a child and strangulation in the third degree, originating out of New Britain (New Britain case).

In count one, the petitioner alleged ineffective assistance of counsel in the Manchester case, in which he pleaded guilty to possession of narcotics in violation of General Statutes (Supp. 2014) § 21a-279 (a), in exchange for a fully suspended sentence and probation. In this count, he claimed that his trial counsel, Attorney Mark E. Holmes, failed to adequately inform him regarding the immigration consequences of the plea and that, had trial counsel properly informed him, he would have rejected the state's plea offer.[10]

In count two of this petition—the claim that is the subject of this appeal—the petitioner's allegations were directed at his trial counsel's performance in the New Britain case, in which the petitioner pleaded guilty to risk of injury to a child and strangulation in the third degree. In this count, he claimed that the performance of his trial counsel, Attorney Cosgrove, violated his right to the effective assistance of counsel under the

sixth and fourteenth amendments to the United States constitution because, inter alia, Cosgrove failed to inquire about the petitioner's immigration status and failed to properly advise him of the immigration consequences of his plea. Specifically, the petitioner alleges that Cosgrove had access to information that the petitioner was not a United States citizen and failed to inform the petitioner that he would almost certainly be subject to deportation as a consequence of his guilty plea to a felony, namely, risk of injury to a child, that would likely be considered a "crime of child abuse, child neglect, or child abandonment" under federal law. 8 U.S.C. § 1227 (a) (2) (E) (i) (2012).

Indeed, sometime in or around 2017, the federal government initiated removal proceedings against the petitioner based, in part, on his conviction of risk of injury to a child, which is the subject of this appeal. In connection with those proceedings, on May 30, 2019, the petitioner was deported to Jamaica.

At the habeas trial, as it related to the New Britain case, the petitioner testified and presented testimony from Attorney Cosgrove and the prosecutors involved in his case, Attorneys Louis Luba and Mary Rose Palmese. He also presented expert testimony from two attorneys. With respect to the penultimate question of whether the petitioner would have gone to trial had his trial counsel not performed deficiently, the petitioner repeatedly testified that he did not know whether he would have gone to trial if he was properly advised of the immigration consequences of his guilty pleas. For instance, the petitioner was asked, "[a]nd were you interested in potentially going to trial [in] this case?" The petitioner replied in relevant part: "To be honest with you, I mean . . . I've heard a lot of things about trial, and I'm not an expert or anything like that. I mean, I'm . . . not familiar with anything when it comes to trial, so I'm not sure where I would have gone with that. But, I mean, I was willing to take the first [guilty plea] option that [my trial counsel] had given me . . . ."

After the hearing, the habeas court issued a memorandum of decision, in which the court found in relevant part: "At the habeas trial, [Attorneys Luba and Palmese] . . . both testified credibly that they were not willing to consider dropping the risk of injury [to a child] charge against the petitioner. Attorney Palmese further testified that, under the circumstances of the petitioner's case, particularly the seriousness of the charges and the description of the petitioner's conduct, she would not change the charges. Thus, there is no evidence that there was another, more favorable offer that was available to the petitioner. . . .

"[On the basis of] the record, even if the court presumed that Attorney Cosgrove . . . [performed] deficient[ly] [by] failing to inquire into the petitioner's immigration status and [to] advise the petitioner [concerning]

the potential immigration consequences of his plea, the court finds that the petitioner has not proven that he would have rejected the offer and proceeded to trial or accepted an alternative offer." [11] (Citations omitted.) Accordingly, the habeas court denied the petition for a writ of habeas corpus as to count two, the claim involving the New Britain case. This appeal followed.

We begin by setting forth the standard of review applicable to the petitioner's appeal. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of historical facts to questions of law that is necessary to determine whether the petitioner has demonstrated prejudice under *Strickland* [v. *Washington*, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], however, is a mixed question of law and fact subject to our plenary review." (Citation omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 717, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. . . . It is well settled that [a] reviewing court can find against a petitioner on either ground, whichever is easier." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, supra, 712–13.

"For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the second prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 643, 153 A.3d 1264 (2017); see, e.g., *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Furthermore, to satisfy the required showing of prejudice, "[i]t is clear enough that a [petitioner] must make more than a bare allegation that he would have pleaded differently and gone to trial . . . ." (Citations omitted; internal quotation marks omitted.) *United States* v. *Horne*, 987 F.2d 833, 836 (D.C. Cir.), cert. denied, 510 U.S. 852, 114 S. Ct. 153, 126 L. Ed. 2d 115 (1993). "Courts should not upset a plea solely because of post hoc assertions from a [petitioner] about how he would have pleaded but for his attorney's deficiencies. [Courts] should instead look to contemporaneous evidence to substantiate a [petitioner's] expressed preferences." *Lee* v. *United States*, U.S. , 137 S. Ct. 1958, 1967, 198 L. Ed. 2d 476 (2017).

On appeal, the petitioner asserts that the habeas court incorrectly concluded that he did not meet his burden of establishing that, but for the deficient performance of his trial counsel, there is a reasonable probability that he would have rejected the state's plea offer and proceeded to trial. We disagree.

Not only did the petitioner fail to produce contemporaneous evidence that, but for the deficient performance of his trial counsel, there is a reasonable probability that he would have rejected the plea offer and proceeded to trial; see, e.g., id.; but his own testimony at the habeas trial does not support his claim. Instead, the petitioner admitted that, even with the benefit of hindsight and the knowledge that he would be deported, he is not sure that he would have proceeded to trial, even if he had been advised of the immigration consequences of his guilty plea. Accordingly, the petitioner's own testimony, even if credited, fails to meet his burden of showing that it was reasonably probable that he would have rejected the plea offer and insisted on a trial. See, e.g., *United States* v. *Kelly*, 98 Fed. Appx. 902, 905 (2d Cir. 2004) (even if found to be true, allegation that, but for defense counsel's alleged errors, defendant " 'might have elected to go to trial,' " was not enough to show prejudice).

Acknowledging the equivocal testimony of the petitioner, the petitioner's habeas counsel attempts to fill that gap in the record by pointing to other factors that support the petitioner's contention that, but for the deficient performance of his trial counsel, there is a reasonable probability that he would have rejected the state's plea offer and proceeded to trial.

First, the petitioner asserts that the state's case against him was not very strong because the complainant had recanted her statement, and that this lack of strength supports the notion that the petitioner would have rejected the plea offer and proceeded to trial. Second, the petitioner points to his testimony that he prioritized keeping his family together and would have made decisions that favored better immigration consequences. Although we acknowledge that these factors would be relevant to assessing whether the petitioner's position that he would have rejected the plea offer and proceeded to trial was reasonable, these factors cannot overcome the petitioner's own testimony that, knowing all of these things, he still was not sure whether he would have proceeded to trial.

The petitioner also asserts that he established prejudice because, but for the deficient performance of his trial counsel, he would have accepted a more favorable plea offer. We disagree. The habeas court made a specific factual finding that there was no more favorable plea offer available to the petitioner. Specifically, the habeas court found that "[Attorneys Luba and Palmese]

. . . both testified credibly that they were not willing to consider dropping the risk of injury [to a child] charge against the petitioner. . . . Thus, there is no evidence that there was another, more favorable offer that was available to the petitioner." The petitioner does not challenge this factual finding by the habeas court. Therefore, the record does not support a conclusion that there was a reasonable probability that, but for his trial counsel's deficient performance, the petitioner would have accepted a more favorable plea offer.[12]

The petitioner also points to the following testimony in support of his claim that, had his trial counsel properly informed him of the immigration consequences of his plea, the outcome of the New Britain case would have been more favorable to the petitioner. On redirect examination, the petitioner's habeas counsel asked, "[b]ut I'm talking more about when you were deciding whether or not even to enter into . . . these plea agreements, the risk of injury [to a child] plea agreement . . . . Would you have approached them differently had you understood the immigration consequences better than was explained to you by [trial counsel]?" The petitioner responded, "[a]bsolutely." In light of the habeas court's unchallenged finding that there was no other, more favorable plea offer available to the petitioner when he pleaded guilty, the petitioner's testimony does not satisfy his burden of demonstrating that there is a reasonable probability that he would have proceeded to trial or accepted a more favorable plea offer. Quite simply, the petitioner's testimony that he would have approached the matter "differently" is of no legal import when he has failed to establish that there were any reasonably probable alternatives available to him.

We agree with the habeas court that the petitioner did not meet his burden of establishing that there was a reasonable probability that he would have rejected the plea offer and proceeded to trial. It is well established that "[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice." *Nardini* v. *Manson*, 207 Conn. 118, 124, 540 A.2d 69 (1988). Therefore, because we conclude that the habeas court correctly concluded that the petitioner had failed to establish prejudice, we need not address the performance prong. Accordingly, we conclude that the habeas court properly denied the petitioner's petition for a writ of habeas corpus as to the claim involving the New Britain case.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The habeas court granted the petitioner's petition for certification to appeal pursuant to General Statutes § 52-470 (g). The petitioner subsequently appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes

§ 51-199 (c) and Practice Book § 65-1.

[2] It is undisputed that the petitioner was in the custody of the respondent, the Commissioner of Correction, at the time he filed his habeas petition. After the habeas trial, but before the petitioner filed this appeal, the federal government deported the petitioner to his native country of Jamaica. As a result, the respondent initially asserted that the petitioner's appeal was moot because the petitioner had been deported based in part on convictions unconnected to this appeal. After briefing was completed in this case, this court issued its decision in *State* v. *Gomes*, 337 Conn. 826, 256 A.3d 131 (2021), which held that deportation does not render an appeal moot because the court can render practical relief regarding the collateral consequences of a criminal conviction. See id., 838, 845.

Thereafter, this court ordered the parties to file supplemental briefs "addressing the impact, if any, of . . . *Gomes* . . . on the present appeal." (Citation omitted.) In his supplemental brief, the respondent conceded that, in light of this court's holding in *Gomes*, "the petitioner's deportation does not render his appellate challenge to his conviction in this appeal moot." We agree and thus address the merits of the petitioner's appeal.

[3] "A 'green card' is a document [that] evidences an alien's permanent residence status in the United States." *Singh* v. *Singh*, 213 Conn. 637, 640 n.3, 569 A.2d 1112 (1990).

[4] In accordance with our policy of protecting the privacy interests of the victim of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[5] In accordance with our policy of protecting the privacy interests of the victim of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[6] At the time of this incident, the petitioner was on probation after having pleaded guilty to assault in the third degree in violation of General Statutes § 53a-61, arising from a prior domestic violence incident involving the same complainant.

[7] The habeas court found that Attorney Cosgrove was not aware of the petitioner's immigration status until the very end of the plea canvass, despite the fact that his file contained a transcript from another, unrelated case that referenced the petitioner's birthplace of Jamaica. Although the habeas court did not rule on whether this was deficient performance, and thus we have no occasion to either, we are troubled by trial counsel's lack of awareness of the immigration status of his client.

[8] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless. The entry of a guilty plea under the *Alford* doctrine carries the same consequences as a standard plea of guilty. By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Simpson*, 329 Conn. 820, 824 n.4, 189 A.3d 1215 (2018).

[9] Around the same time that this guilty plea was entered, in a separate criminal case, the petitioner also pleaded guilty under the *Alford* doctrine to possession of narcotics in violation of General Statutes (Supp. 2014) § 21a-279 (a), arising from an incident in Manchester, and was sentenced to a term of three years of incarceration, execution suspended, and three years of probation.

[10] The habeas court found that "the petitioner has sustained his burden of proving both deficient performance and prejudice" as to the claim involving the Manchester case. Therefore, the habeas court granted the petition for a writ of habeas corpus as to the first count. The habeas court found that there were other plea offers available to the petitioner that did not involve pleading guilty to a felony. The habeas court further found that "[i]t

stands to reason that, if [the petitioner] did not want to go to [prison] because he would be separated from his child, then had he been properly advised on near certain deportation that would forever separate him from his child, he would have availed himself of the [alternative] offers. [Because] all [of] the offers were available to the petitioner after a judicial pretrial, the court finds that the trial court would have imposed sentence in accordance with the offer. Moreover, transcripts from the underlying proceedings indicate that the trial [court] would have accepted the petitioner's plea agreement for the drug paraphernalia conviction." The respondent, the Commissioner of Correction, has not challenged the habeas court's ruling on this count, and that claim is not at issue in this appeal.

[11] There is some ambiguity in the habeas court's memorandum of decision with respect to whether the habeas court applied the precise prejudice standard from *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), by not including the "reasonable probability" language before its conclusion that the petitioner had not met his burden. It is important to note that the petitioner does not assert that the habeas court applied the incorrect legal standard. Instead, the parties agree that the habeas court applied the correct legal standard to the petitioner's claim—namely, whether the petitioner proved that there was *a reasonable probability* that the petitioner would have rejected the plea offer and proceeded to trial. See id.

[12] To the extent that the petitioner also claims that, even if a more favorable plea offer did not exist, his trial counsel should have obtained a different plea offer, and that the petitioner would have taken it if he had, we find no support for this claim. In the present case, Attorneys Luba and Palmese testified that they would not have considered dropping the risk of injury to a child charge against the petitioner, and the habeas court found that testimony credible. Under the facts of this case, particularly when the petitioner was already on probation for a domestic violence incident with the same complainant, and Luba and Palmese testified that they were only considering plea offers with prison time because of the seriousness and nature of the offense, we cannot conclude that the petitioner has demonstrated that trial counsel should have obtained a different plea offer.